# FRIEDMAN v. SCHWELLENBACH et al.
## No. 9305.

United States Court of Appeals
District of Columbia.
Argued Nov. 14, 1946.
Decided Dec. 16, 1946.
Writ of Certiorari Denied March 17, 1947.
See 67 S.Ct. 979.

Mr. Morton Stavis, of New York City, with whom Messrs. Sidney V. Smith and Milton V. Freeman, both of Washington, D. C., were on the brief, for appellant.

Mr. Lawrence V. Meloy, Attorney, United States Civil Service Commission, of Washington, D. C., member of the Bar of the State of California, pro hac vice, by special leave of court, with whom Mr. Edward M. Curran, United States Attorney at the time the brief was filed, of Washington, D. C., was on the brief, for appellees. Mr. Daniel B. Maher, Assistant United States Attorney, of Washington, D. C., also entered an appearance for appellees.

Before GRONER, Chief Justice, and EDGERTON and WILBUR K. MILLER, Associate Justices.

WILBUR K. MILLER, Associate Justice.

As of September 12, 1944, the appellant, Morton Friedman, was discharged from the position of chief of the classification division of the War Manpower Commission because the United States Civil Service Commission had determined that there was a reasonable doubt as to his loyalty to the Government of the United States. Soon

thereafter he sued in the District Court of the United States for the District of Columbia for a declaration that he had been improperly dismissed and that he was entitled to reinstatement. Other relief sought was that the chairman of the War Manpower Commission be required to reinstate him, and that the Civil Service Commission be enjoined from interfering with his reinstatement and directed to restore his general eligibility for examination and re-employment. After the appellees had answered, both sides moved for summary judgment and filed supporting affidavits. Summary judgment for the appellees was granted [1] and this appeal followed.

The appellant was never in what is called the classified Civil Service, a status attained in peacetime through competitive examination. He held the position under a wartime relaxation of the Civil Service procedure. In the early days of World War II it became apparent that of necessity there would be a large and rapid increase in the number of civilians employed by the government and that the use of the ordinary peacetime routine of the Civil Service Commission in examining and certifying applicants probably would retard the nation's war effort. Consequently, on February 16, 1942, the President, by virtue of the authority given him by the Civil Service Act, 5 U.S.C.A. § 632 et seq., issued an executive order, No. 9063, authorizing the Civil Service Commission to adopt such special procedures and regulations as it might deem necessary in order to avoid delay in obtaining qualified persons for government service during the emergency. The order provided that employees appointed solely by reason of any special procedure set up pursuant to the executive order should not thereby acquire a classified Civil Service status, but might be retained for the duration and for six months thereafter should the Commission so decide. Four days later another executive order, No. 9067, authorized the Civil Service Commission to effect the transfer of any employee of an executive department or agency to a department or agency having a higher priority classification if the employee were considered competent for the new assignment. The Commission was authorized to adopt appropriate rules and regulations with respect to such transfers.

Pursuant to these executive orders, the Civil Service Commission adopted War Service Regulations which became effective March 16, 1942. In order to expedite employment and transfers the Commission made free use of conditional appointments and conditional transfers. In this manner the employee required could be put to work at once, subject to character investigation, and the Commission thereafter could make its inquiry concerning qualifications before certifying as to eligibility. It was under this procedure that the appellant was transferred on May 29, 1942, from a government position not under the classified Civil Service to a place in the Division of Central Administrative Services, Office for Emergency Management, a position requiring Civil Service status. The transfer was made expressly "subject to character investigation." While the investigation was taking place the appellant went to the War Manpower Commission as a part of a group transfer of the personnel functions of the Office for Emergency Management.

War Service Regulation II, Section 3, provides as follows:

"An applicant may be denied examination and an eligible may be denied appointment for any one of the following reasons:

\* \* \* \* \* \*

"(g) a reasonable doubt as to his loyalty to the Government of the United States;

\* \* \* \* \* \*

"Any of the reasons stated in the foregoing subdivisions from (b) through (h) inclusive, shall be sufficient cause for removal from the service."

As a result of its investigation the Commission determined that there was a reasonable doubt as to the appellant's loyalty to the Government of the United States and it decided, therefore, that he was ineligible and should be removed. On October 27, 1942, it requested Central Administrative Services, Office for Emergency Management, to release the appellant.

---

[1] The opinion of the learned justice who presided at the trial of the case in the District Court is reported in 65 F.Supp. at page 254.

Friedman appealed and a hearing before the Board of Appeals and Review of the Civil Service Commission was held on January 26, 1943, at which time the appellant was given full opportunity to present evidence concerning his eligibility for War Service appointment. After reviewing the record made at the hearing, the Commission reaffirmed its determination that the appellant was ineligible and informed him of that decision by letter dated May 3, 1943. On May 17, 1943, the War Manpower Commission requested additional time in which to consider whether a direct appeal to the Civil Service Commission should be taken. Then on October 13, 1943, the War Manpower Commission requested the Civil Service Commission to reconsider the matter, which the latter did and, having done so, advised the War Manpower Commission on February 25, 1944, that it adhered to its original decision. On March 23, 1944,

the War Manpower Commission informed the Civil Service Commission that Friedman had requested that he be permitted to appear in person before the latter Commission, and that he be allowed to continue in his work pending such appearance. The appellant was permitted to and did appear before the Civil Service Commission on April 19, 1944, following which, on June 5, 1944, the Commission reaffirmed its original decision and so notified Friedman.[2]

The United States has the right to employ such persons as it deems necessary to aid in carrying on the public business. It has the right to prescribe the qualifications of its employees and to attach conditions to their employment. The War Service Regulation which permits the removal from federal service of one concerning whose loyalty to the government the Civil Service Commission entertains a

[2] "United States Civil Service Commission
Washington, D. C.
"File: BAR:JFE:GD
June 5, 1944
"Mr. Morton Friedman
c/o Personnel Office
War Manpower Commission
Washington, D. C.

"My dear Mr. Friedman:

"Reference is made to your appearance before the Commission on April 19, 1944, in further prosecution of your appeal from the finding of ineligibility for continuance in the service.

"The Commission has given more careful consideration to your case including the information developed during the course of the investigations which were made and the testimony before the Board of Appeals and Review at the hearing which was accorded you. Particular attention, however, has been given to your statements and based upon those statements the Commission has concluded that the finding of ineligibility was in accordance with the standards applied in such cases and therefore has affirmed the previous action.

"The Commission's action was based mainly on your activities in connection with the American Peace Mobilization and your shift in attitude and point of view following the declaration of war between Germany and Russia. It may be true that many members of the American Peace Mobilization were not aware that it was Communist-dominated and pro-Communist but it is generally recognized

that those who were prominently and actively affiliated with that organization were people who over a period of time had shown sympathy with the Communist cause. Your testimony was that you were sent to the first meeting of the American Peace Mobilization in Chicago as a representative of your local union; that you also were sent to a meeting of the organization in New York City as a delegate, and that you participated actively in their meetings and affairs. You also testified that you were active in the affairs of the Washington Peace Mobilization and served on several of its committees.

"You were admittedly opposed to the United States participation in war before the invasion of Russia by Germany but thereafter changed your mind and were of the opinion that this country should fight along with the other United Nations. Just how long it was before Pearl Harbor that you changed your mind is not definitely established, but on the occasion of your appearance before the Commission you indicated that it was probably in August of 1941, which obviously was soon after June 22, 1941.

"These matters, together with other activities which have been personally discussed with you are convincing to the Commission that you are not eligible for retention in the service according to the standards observed by the Commission.
"Very respectfully,
/s/ William C. Hull
Executive Assistant."

reasonable doubt undoubtedly was reasonable and proper and the making of it was well within the scope of the authority conferred on the Commission by the Act and the two executive orders. We are not concerned here with the question as to whether Friedman was in fact disloyal. Under the regulation he could be removed from service if the Commission had a reasonable doubt as to his loyalty. After investigation and patient hearings, the Commission continued, in its opinion, to have a reasonable doubt.

 In these circumstances the Commission's finding is conclusive. It is beyond our province, and it was beyond the province of the District Court, to review the finding of the Civil Service Commission that it had a reasonable doubt as to whether Friedman was loyal to the government, because it has long been held that the courts will not review managerial acts, not clearly arbitrary, of executive officials performed within the scope of their authority, and will not substitute their judgment in such matters for that of the officials. More than one hundred years ago the Supreme Court said that for the courts to interfere with the performance of the ordinary duties of the executive departments of the government "would be productive of nothing but mischief." [3] A century later the Supreme Court again said that it would be productive of nothing but mischief for the courts to interfere with the executive departments in the performance of their ordinary duties.[4]

In this case, as we have said, the appellant was conditionally employed. The character investigation which was the condition imposed disclosed to the satisfaction of the Civil Service Commission that there was reasonable doubt as to his loyalty. Consequently it caused his removal from the service under the regulation which it had lawfully promulgated. Throughout the procedure, which lasted many months, the appellant was accorded the fullest opportunity to present his case, and he availed himself of the opportunity. The action of the Commission was no more than the performance of an ordinary duty of an executive agency. Under the long established rule, the District Court was correct in refusing to interfere with the performance of that duty.

Affirmed.

---

[3] Decatur v. Paulding, 1840, 14 Pet. 497, 39 U.S. 497, 515, 10 L.Ed. 559.

[4] Perkins v. Lukens Steel Co., 1940, 310 U.S. 113, 131, 132, 60 S.Ct. 869, 84 L.Ed. 1108.