Heffernan, J.
This proceeding was instituted pursuant to the provisions of article 78 of the Civil Practice Act by five persons who are presently employed in the school system of the city of New York and one retired teacher. The relief sought by respondents is a determination directing the appellants to disregard chapter 360 of the Laws of 1949 and to' refrain from taking any action for its enforcement.
Appellants made objections in point of law to the petition upon the ground that it does not state facts sufficient to entitle respondents to the relief demanded and also moved that certain allegations be stricken from the petition upon the ground that they are irrelevant, immaterial and redundant. Both motions were denied in the court below.
The issue in this proceeding is precisely the same as that involved in Thompson v. Wallin (276 App. Div. 463) that is, whether the Constitution of the State or Nation compels the employment, as teachers of children in our public schools, of persons found to advocate the overthrow of our Government by force, violence or other unlawful means, and whether it is unconstitutional to provide that membership in an organization which, after appropriate notice and hearing, the Board of Regents finds to advocate the overthrow of our Government by force, is prima facie evidence of disqualification for appointment or retention as teachers in the public schools.
In the Thompson case (supra) the action was brought by plaintiffs, as chairman and secretary, respectively, of the “ Communist Party of the State of New York ” for a declaratory judgment and injunction restraining- the enforcement of the statute.
The appellants in this proceeding are the same as the appellants in the Thompson case with the exception of the Commissioner of Education who is one of the appellants in the present proceeding but was not named as a party in the Thompson case.
Both cases were heard together by the Special Term and one opinion was written covering both. Appeals were argued in both cases together in our court and will be decided simultaneously.
There is just one point in this proceeding which is different from the Thompson case in form only.
In their petition in the instant proceeding respondents have incorporated numerous allegations which appellants assert have no bearing on the issues involved. These allegations, which appellants moved to strike out may be grouped as follows
*499 1. Allegations pleading the educational background, the religious affiliation, and the political affiliation of each party petitioner, and an allegation setting forth the reason why all this has been pleaded.
2. An allegation as to the period of time which the Legislature considered the bill, when after passage by the Legislature it was signed by the Governor, whether or not hearings were held upon it by the Legislature and the Governor, whether memoranda concerning it were submitted and petitioners’ version of the reasons why the Legislature passed the law.
. 3. An allegation that there already are laws in effect in this State which would accomplish the purpose of the Feinberg Law.
4. Allegations concerning the hearing which the Board of Regents has already held under the Feinberg Law and what transpired at that hearing.
5. Allegations as to what the boards of education have thus far done under the Feinberg Law and observations as the results which petitioners foresee from compliance with the rules adopted by the Board of Regents and from enforcement of the law.
Whether or not a particular statute is needed to deal with a situation in the light of other existing statutory provisions is for the legislative body to decide and the courts will not disturb that decision (Dunne v. United, States, 138 F. 2d 137, certiorari denied 320 U. S. 790).
Since the Regents have made no determination listing an organization, since they have not completed their hearings, what the Regents have done has no bearing upon the constitutionality of the law, in a proceeding brought prior to the completion of the hearings by the Board of Regents, prior to the listing of any organization by the Board of Regents and when the Regents have been restrained from concluding their hearings and reaching a determination.
Since no teacher has been disqualified or even accused under the Feinberg Law, what any board of education has done any more than what the Regents have done under the Feinberg Law thus far, and certainly petitioners’ ideas as to the consequences of enforcement of the law have no bearing upon its constitutionality.
Obviously these allegations have no place in a pleading in a legal proceeding and should have been stricken out.
The period of time which the Legislature considered the proposed law, whether or not hearings were held in connection with it by the Legislature or the Governor have nothing to do "with its constitutionality or unconstitutionality.
*500 In 1917, the Legislature enacted a statute which now constitutes section 3021 of the Education Law and which reads as follows: “ A person employed as superintendent of schools, teacher or employee in the public schools, in any city or school district of the state, shall be removed from such position for the utterance of any treasonable or seditious word or words or the doing of any treasonable or seditious act or acts while holding such position.”
There has, since 1939, been in the Civil Service Law, section 12-a. Tins section applies to all persons in the service of the State or of any civil division or city, as well as to persons in the public school system or in any other State educational institution. It bars appointment or retention of any person in such employment who:
“ (a) By word of mouth or writing wilfully and deliberately advocates, advises or teaches the doctrine that the government of the United States or of any state or of any political subdivision thereof should be overthrown or overturned by force, violence or any unlawful means: or
“ (b) Prints, publishes, edits, issues or sells, any book-, paper, document or written or printed matter in any form containing or advocating, advising or teaching the doctrine that the government of the United States or of any state or of any political subdivision thereof should be overthrown by force, violence or any unlawful means, and who advocates, advises, teaches, or embraces the duty, necessity or propriety of adopting the doctrine contained therein:
“ (c) Organizes or helps to organize or becomes a member of any society or group of persons which teaches or advocates that the government of the United States or of any state or of any' political subdivision thereof shall be overthrown by force or violence, or by any unlawful means ”.
The operative provisions of the Feinbérg Law constitute an amendment of the Education Law adding a new section 3022 thereto. The provisions of that statute are:
Subdivision 1. The Board of Regents is directed to adopt rules and regulations for the disqualification or removal of teachers and others in the public school system who violate section 3021 of the Education Law, or who are ineligible for appointment or retention under section 12-a of the Civil Service Law.
Subdivision 2. The Board of Regents is directed “ after inquiry, and after such notice and hearing as may be appropriate,” to “ make a listing of organizations which it finds to be subversive in that they advocate, advise, teach or embrace the *501 doctrine that the government of the United States or of any state or of any political subdivision thereof shall be overthrown or overturned by force, violence or any unlawful means, or that they advocate, advise, teach or embrace the duty, necessity or propriety of adopting any such doctrine, as set forth in section twelve-a of the civil service law.”
The Board of Regents is further directed to provide, in the rules and regulations required by the first subdivision of the section, that membership in any organization included in the listing made by it, shall constitute “ prima facie evidence of disqualification for appointment to or retention in any office or position in the public schools of the state.”
What has heretofore been set forth is the actual addition by the Feinberg Law to the Education Law as section 3022 thereof. It is section 3 of the Feinberg Law (L. 1949, ch. 360). Section 2 of chapter 360 is the provision renumbering former sections of the Education Law to permit a new section 3022.
There is a section 1 in chapter 360 which is not made a part of the Education Law. It contains no directive to the Board of Regents or to any officer or official body. It is the preamble to the law setting forth the reasons why the Legislature enacted the law. It is not a part or provision of the law to be administered or put into effect.
What is said in this introductory portion of the Feinberg Law is referred to here because respondents’ contention that the Feinberg Law violates the constitutional proscription of bills of attainder, is based solely on this introductory section of the law and not upon any of the provisions which are section 3022 of the Education Law.
It is to be noted that the provisions in the Feinberg Law have the effect of giving added protection to persons in the State public school system who might be charged, under subdivision (c) of section 12-a of the Civil Service Law, with being a member of any society or group of persons, which advocates the overthrow of the Government by force, violence or any unlawful means.
First, under the Feinberg Law the Board of Regents must, upon notice, conduct a hearing and thereafter list the organizations found as the result of such hearing, to advocate the overthrow of the Government by force, violence or other unlawful means. Second, membership in such organization is made prima facie evidence only of disqualification for appointment to or retention in any position in the public school system.
*502 The court below has held the Feinberg Law unconstitutional as being a bill of attainder and as contrary to the due process clause of the Constitution of the United States. From that determination appellants have come to this court.
Full and complete court review of any determination of the Board of Regents listing an organization, and of any determination of a board of education finding a teacher disqualified under the Feinberg Law, is available.
An organization listed by the Board of Regents, after hearing upon notice, as advocating the overthrow of the Government by force, violence, or other unlawful means has the remedy provided in this State by article 78 of the Civil Practice Act. This is a statute providing a right of review from the determination of a body or officers “ which involves an exercise of judgment or discretion ” (Civ. Prac. Act, § 1284, subd. 2). It is a general statute which obtains where no other remedy is specifically provided. (See Matter of New York Edison Co. v. Maltbie, 271 N. Y. 103, 111-112.)
A teacher found disqualified pursuant to the Feinberg Law by a board of education has an election of remedies — several methods of appeal or review from which to choose:
(1) Subdivision (d) of section 12-a of the Civil Service Law specifically provides the following review procedure: “(d) A person dismissed or declared ineligible may within four months of such dismissal or declaration of ineligibility be entitled to petition for an order to show cause signed by a justice of the supreme court, why a hearing on such charges should not be had. Until the final judgment on said hearing is entered, the order to show cause shall stay the effect of any Order of dismissal or ineligibility based on the provisions of this section. The hearing shall consist of the taking of testimony in open court with opportunity for cross-examination. The burden of sustaining the validity of the order of dismissal or ineligibility by a fair preponderance of the credible .evidence shall be upon the person making such dismissal or order of ineligibility.”
(2) Section 310 of the Education Law gives the teacher, the right of appeal or petition to the Commissioner of Education.
(3) Subdivision 5 of section 2523 of the Education Law accords the teacher an alternative right of review in accordance with the provisions of article 78 of the Civil Practice Act.
In addition to these remedies. where constitutional rights of liberty or property are involved due process entitles the one *503 whose rights are invaded to independent judicial determination in the courts of the constitutional question involved. The constitutionality of an act of the Legislature is reviewable in a court of equity. The Boards of Regents is a delegate of the Legislature and regulation by the one is regulation by the other. If an act of the Legislature is reviewable in the courts certainly the act of its delegate is likewise reviewable (Staten Island Edison Corp. v. Maltbie, 270 App. Div. 55, affd. 296 N. Y. 374).
The sole issue in this case is that which makes one activity— membership in an organization which advocates the overthrow of our Government by force — prima facie a disqualification to teach in the public schools of this State. The issue is not, as claimed by respondents, freedom of speech, freedom of thought, freedom of assembly or freedom of the press: The Feinberg Law prohibits none of these freedoms.
There is no constitutional right to be a teacher any more than there is to be a public official or a member of any of the professions. No one has a constitutional right to advocate the overthrow of the Government by force and violence. The courts have held time and time again that the freedoms guaranteed by the Constitution are not absolute but must yield to the public welfare.
We are not concerned with the wisdom of the Feinberg Law. The question whether such a law should or should not be enacted was one for the Legislature and not for the courts (Johnson v. City of New Yorh, 274 N. Y. 411, 430; People v. Nebbia, 262 N. Y. 259, 271; Schieffelin v. Goldsmith, 253 N. Y. 243, 248).
The Feinberg Law does not disqualify a teacher for membership in the Communist party or in any other organization; it merely makes prima facie evidence of disqualification to be a teacher, membership in an organization which, after notice and hearing, the Board of Regents ascertains to advocate the overthrow of our Government by force, violence or other unlawful means. This prima facie evidence of disqualification the teacher has full and complete opportunity to rebut. It does not restrict anyone’s right to join and be a member of the Communist party or of any other organization, even one which advocates the overthrow of the Government by force. It does not affect anyone’s privilege to hold, speak or publish any views, beliefs, or opinions, nor the privilege of assembly, nor the privilege of petitioning the Government, nor the privilege of exercising any political rights. It does not decree “ guilty by association ” nor direct that a teacher suffer any disqualification for mere association. *504 The disqualification to be a teacher is for individual action, the association being made merely prima facie evidence of disqualification. It does not determine that the organization which styles itself the “ Communist Party of the State of New York ” does advocate the overthrow of our Government by force and violence; it merely directs the Board of Regents to ascertain, after appropriate notice and hearing, those organizations which do advocate that doctrine. It does not direct or permit the Board of Regents to find any organization to be “ subversive ” merely. It directs and permits the listing of those organizations which advocate the overthrow of the Government by force, violence or other unlawful means, and those organizations only.
The standards for qualification as teachers in the public schools are fixed by the Legislature. It may, constitutionally, require as qualification, and declare as disqualification, factors other than scholastic, including as a qualification, adherence to the form of Government of the United States, and as a disqualification, advocacy of the overthrow of the Government by force, violence or other unlawful means. The qualifications of a teacher in the public schools are more than pedagogical and possession of an ability to impart knowledge of certain technical subjects.
The most important qualification of a teacher is loyalty to our Government. It necessarily follows that disqualification is advocacy of the overthrow of that Government. The statute under review is a law dealing with public employment of teachers in our public schools. To avail oneself of the privilege of teaching certain qualifications must be possessed, certain rights renounced.' This is not an unconstitutional classification (Matter of Summers, 325 U. S. 561; Hawker v. New York, 170 U. S. 189; People v. Crane, 214 N. Y. 154, affd. 239 U. S. 195; Heim v. McCall 214 N. Y. 629, affd. 239 U. S. 175).
When it comes to loyalty to our Government, the affirmation of loyalty, the denial of disloyalty, renunciation of membership in organizations advocating overthrow of our Government or subscribing to subversive tenets, all have been upheld as qualifications of public employment or of holding office in organizations availing themselves of statutory privileges (Friedman v. Schwellenbach, 159 F. 2d 22, certiorari denied 330 U. S. 838; Washington v. Clark, 84 F. Supp. 964; National Maritime Union of America v. Herzog, 78 F. Supp. 146, affd. 334 U. S. 854; Inland Steel Co. v. National Labor Relations Bd., 170 F. 2d 247, certiorari granted 335 U. S. 910; Wholesale & Warehouse Workers Union v. Douds, 79 F. Supp. 563; Joint Anti-Fascist Refugee Committee v. Clark, 177 F. 2d 79, 84).
*505 We are not dealing here with the propaganda of soap box orators, or the utterances of those who preach from housetops or pray on street corners. We are dealing with a statute pertaining solely to teachers whose influence upon the children who come under their instruction is extraordinary. It is, therefore, of paramount importance that the association of teacher and pupil should imbue the latter with love of country, respect for its laws and should inculcate in the childish mind principles of justice and patriotism. We are not so naive as to accept as gospel the argument that a teacher who believes in the destruction of our form of Government will not affect his students. It is not necessary to impart a thought by direct statement. The result may be accomplished by indirect, subtle, insinuations; by what is left unsaid as well as by what is said.
The decision of the United States Supreme Court in United Public Workers v. Mitchell (330 U. S. 75) is authority for the constitutionality of the Feinberg Law. In that case the court upheld the constitutionality of the provision of the Hatch Act which forbids Federal employees to take “ any active part in political management or political campaigns ”. In that case too, plaintiffs relied upon the First Amendment, but the court pointed out that ‘ ‘ The essential rights of the First Amendment in some instances are subject to the elemental need for order without which the guarantees of civil rights to others would be a mockery. * * * this court must balance the extent of the guarantees of freedom against a congressional enactment to protect a democratic society against the supposed evil of political partisanship by classified employees of government In that opinion, as in so many others, the court pointed out that “ fundamental human rights are not absolutes ”. (Pp. 95, 96.) Plaintiffs in that case made all of the arguments that respondents here make.
In People v. American Socialist Society (202 App. Div. 640, 645-646), the statute upheld:
“ prohibits the teaching of doctrines inimical to our form of government and tending to the destruction of organized government by force and violence. There can be little question but that it is within the power of the Legislature to enact statutes for the self-preservation of the State, and to prevent the teaching of doctrines advocating the destruction of the State by force. # * *
“ In enacting this statute the Legislature clearly sought to prevent the teaching of doctrines hostile to the safety of our *506 government. We think the Legislature has as much right to enact a salutary statute to prevent the promulgation of doctrines inimical to our form of government, the putting into effect of which would lead to the conviction of those who had adopted said doctrines under existing penal law, as to punish those who were guilty of violating such penal laws. ’ ’
In holding that the statute is a bill of attainder the Special Term based its decision solely on the contents of section 1 of chapter 360 of the Laws of 1949. This section, however, as we have already shown, is no part of the Education Law to be administered by the Board of Regents or any officer or official body. It is merely the preamble to the law, the statement by the Legislature as to its reasons for the enactment of the law.
The only portion of the law which the Board of Regents is required to enforce — or could enforce — is section 3 which became section 3022 of the Education Law.
The introductory section 1 of the law, cannot be read into the operative provisions thereof, cannot be strained to find in it a directive to the Regents to list the Communist party, cannot be strained to find in it the imposition of punishment upon the Communist party without a hearing. It does not impose (a) any penalty; (b) without a hearing; and these are the two elements of a bill of attainder.
A bill of attainder is a legislative judgment of conviction, an exercise of judicial power by the legislative body; the imposition of punishment by the legislative act (People v. Hayes, 140 N. Y. 484, 490). There is not one of these elements in the Feinberg Law. In the body of the act in which the Board of Regents is directed to take certain steps there is no mention of any organization at all by name. A hearing is provided for in protection of any organization as" to which the Board of Regents shall determine to make inquiry (Education Law, § 3022, subd. 2). No penalty, pain or punishment, or deprivation of any kind is imposed upon any organization which the Board of Regents, after a hearing, shall find advocates the overthrow of the Government by force. And the organization has the remedy of review by the courts from such findings by the Regents. As to any teacher who is a member of an organization which the Board of Regents finds advocates the overthrow of the Government by force, such membership is merely prima facie evidence of disqualification. Thus, even at this point the statute does not impose a deprivation. A teacher found to be a member of such organization has all the protection that the Education Law provides for *507 teachers who are charged with any conduct subjecting them to dismissal, with the alternative remedy provided in subdivision (d) of section 12-a of the Civil Service Law.
In concluding that the statute is a bill of attainder the court below relied on Cummings v. Missouri (4 Wall. [U. S.] 277) and United States v. Lovett (328 U. S. 303). Neither of these cases sustains the position of the Special Term.
The Cummings case (supra) was a criminal statute. The act itself declared an office vacant or an individual disqualified from practicing certain named vocations if he refused to take an oath. No provision was made for a hearing of any kind. The oath provided was like the old English and French tests, retrospective and, as the court said provided punishment for past acts. (See page 198 of the opinion of the United States Supreme Court in Hawker v. New York, 170 U. S. 189, for a statement of the basis for the decision in the Cummings case.) In other words, it was a legislative enactment creating a penalty for past conduct without a hearing.
The Lovett case (supra) was an appropriation act of Congress which: (a) named certain individuals by name; (b) provided that these individuals should not receive any salary or compensation under that statute and, (c) further provided that those persons should not receive salary from the Federal Government at any time in the future. The deprivation thus was by legislative act, and without hearing.
The argument is advanced that by its provision making membership in a listed organization prima facie evidence of disqualification the statute is vitiated because it makes a new rule of evidence, whereby less or different proof is required to convict, falls because that rule is only applicable to an ex post facto law— as regards a criminal or penal statute. Then, too, the argument is fallacious because there is no vested right in a public school employee’s retention of position — conditioned as it always is upon the continued possession of prescribed qualifications. And there is, of course, no vested right in an existing rule of evidence. The Legislature has power to change such rules and in so doing it is not restricted by constitutional prohibitions as to taking of life, liberty or property without due process of law (People v. Turner, 117 N. Y. 227, 233). The Legislature may, without violating constitutional rights, prescribe the qualifications required of those in the public service (16 C. J. S., Constitutional Law, § 460). There can be no serious doubt that the State has power to prescribe and maintain qualifications for its public *508 school personnel and thereby exclude those who adhere to the doctrine of criminal anarchy in violation of sections 160-161 of the Penal Law.
It is a fallacy to suppose that the State is so impotent, so helpless, that it is powerless to ban from its public schools traitorous instructors who preach and teach seditious doctrines with the sinister intent of destroying the Constitution which they have sworn to support. It is an arrogant assumption that a Government cannot protect itself against the infiltration of those who desire to destroy it by force.
The Feinberg Law is not, as argued by respondents, an ex post facto law within the condemnation of the Constitution. That phrase is one which relates exclusively to criminal or penal statutes (11 Am. Jur., Constitutional Law, § 351; 16 C. J. S., Constitutional Law, § 435).
It is a cardinal rule of construction that where the validity of a statute is assailed and there are two possible interpretations, by one of which the statute would be unconstitutional and by the other it would be valid, the court should adopt the construction which would uphold it (People ex rel. Simpson v. Wells, 181 N. Y. 252,257; People ex rel. Simon v. Bradley, 207 N. Y. 592, 610-611).
In our opinion the Feinberg Law does not violate the due process guarantee of the State or Federal Constitutions; neither does it infringe upon the freedoms guaranteed by these fundamental laws.
The law is not a criminal statute. The effect of its application is not criminal punishment. As to a listed organization there is no provision in the statute for talcing any action against it. A teacher found to be a member of a listed organization is subject to an administrative hearing at which such membership is received as prima facie evidence of disqualification, and if such evidence is not rebutted, the teacher is disqualified from employment as such. Thus, neither a listed organization nor a disqualified teacher is subject to criminal proceedings.
This law nowhere makes “ subversive ” doctrines or “ subversive ” conduct a ground for action by the Board of Regents or boards of education. The sole basis of action under the law is the advocacy of the doctrine of overthrow of the Government by force, violence and other unlawful means.
The court below also finds that there is a denial of procedural due process because every member of an organization as to which the Regents hold a hearing to determine whether it is to be listed, is not required to be given notice of the hearing or opportunity to participate.
*509 The same argument was made and rejected in Matter of Kaney v. New York State Civil Service Comm. (190 Misc. 944, affd. 273 App. Div. 1054, affd. 298 N. Y. 707) and to refute it again is but to slay the slain.
The court below also criticizes that provision of the statute as a denial of due process which declares that membership in a listed organization is prima facie evidence of disqualification of a teacher.
Again we repeat this is not a criminal statute. Even criminal statutes frequently declare certain circumstances to be presumptive evidence against the individual charged with crime. Such presumption, even in criminal statutes, where the presumption of innocence is a vital principle, is held not to violate that constitutional protection (People v. Farina, 290 N. Y. 272, 275-276; People v. Pieri, 269 N. Y. 315, 324; People v. Adams, 176 N. Y. 351, 360-362, affd. sub nom. Adams v. New York, 192 U. S. 585, 598-599; Board of Comrs. of Excise v. Merchant, 103 N. Y. 143; People v. Cannon, 139 N. Y. 32; People v. Murphy, 276 N. Y. 612; People v. Gerschinsky, 281 N. Y. 581; People ex rel. Woronoff v. Mallon, 222 N. Y. 456, 461).
Freedom of speech and freedom of the press are among the most precious of our liberties. For the preservation of the Government and of the Constitution which guarantees these rights the courts over and over have held that these rights are not absolute; that those who imperil the very existence of our Government cannot take shelter in the guarantees of freedom of speech, press and assembly and makes those guarantees the very means of self-destruction (Chaplinsky v. New Hampshire, 315 U. S. 568, 571; Gitlow v. New York, 268 U. S. 652; Whitney v. California, 274 U. S. 357; National Maritime Union of America v. Herzog, 78 F. Supp. 146, affd. 334 U. S. 854).
‘l The Constitution,” said the United States Supreme Court in Milwaukee Pub. Co. v. Burleson (255 U. S. 407, 414) “ was adopted to preserve our Government, not to serve as a protecting screen for those who while claiming its privileges seek to destroy it.” A contemporary statement of the same principle is found in Barsky v. United States (167 F. 2d 241, certiorari denied 334 U. S. 843).
And as the court said in Gitlow v. New York (268 U. S. 652, 669, supra): “ It cannot be said that the State is acting arbitrarily or unreasonably when in the exercise of its judgment as to the measures necessary to protect the public peace and safety, it seeks to extinguish the spark without waiting until it has *510 enkindled the flame or blazed into the conflagration. It cannot reasonably be required to defer the adoption of measures for its own peace and safety until the revolutionary utterances lead to actual disturbances of the public peace or imminent and immediate danger of its own destruction; but it may, in the exercise of its judgment, suppress the threatened danger in its incipiency. ’ ’
Many cases are discussed in the opinion of the court'below, in the briefs of respondents and in those of amici curies which have no bearing on the question before us. We are dealing with the education to be given American citizens, to children in the public schools; with the education of these children who should grow up with the desire and the will to preserve our Constitution and system of Government; with the qualification of.teachers to so educate' them. To that end we are dealing with the specific question as to whether the State may not declare disqualified a teacher who advocates the destruction of the Government and to declare that membership in an organization so advocating is prima facie evidence of disqualification.
Neither a legislative body nor the courts may close their eyes to reality. It is a matter of common knowledge that organizations which advocate the overthrow of the Government by force endanger the existence of the United States; that to have members of such organizations as teachers of our children in whose hands will soon rest the fate and existence of that government is a peril to its life. No one has to be told that; the Legislature needed no public hearings to learn that.
It is impossible within reasonable limits of an opinion to answer in detail all the contentions urged upon us to strike down the Feinberg Law. We have considered them all and are convinced that all are without merit. True it is that there are loose dicta in the books which give slight support to respondents’ contentions. Rarely indeed does one case afford an exact precedent for another. However no well considered authority is called to our attention which would justify the conclusion that the statute under consideration transcends constitutional limitations.
The order appeal from is reversed on the law and the petition dismissed, with $50 costs and disbursements to appellants.
Foster, P. J., Brewster, Bergan and Coon, JJ., concur.
Order appealed from reversed, on the law, and the petition dismissed, with $50 costs and disbursements to appellants.