INTERNATIONAL WORKERS' ORDER,
Inc., et al. v. McGRATH et al.

No. 10308.

United States Court of Appeals
District of Columbia Circuit.

Argued Dec. 5, 1949.

Decided March 22, 1950.

Mr. Lee Pressman, Washington, D. C., with whom Mr. Allan R. Rosenberg, Washington, D. C., was on the brief, for appellants.

Mr. L. Clark Ewing, Assistant United States Attorney, Washington, D. C., with whom Assistant Attorney General H. G. Morison and Messrs. George Morris Fay, United States Attorney, Washington, D. C., Edward H. Hickey, Special Assistant to the Attorney General, Stafford R. Grady, Assistant United States Attorney, and Joseph M. Howard, Assistant United States Attorney, Washington, D. C., were on the brief, for appellees.

Before EDGERTON, WILBUR K. MILLER and PROCTOR, Circuit Judges.

WILBUR K. MILLER, Circuit Judge.

The principal question in this case is whether a fraternal insurance company may maintain an action to review an intermediate step in the government's employee loyalty program on the ground that its constitutional rights were thereby invaded.

The loyalty program was initiated by Executive Order No. 9835, issued by the President on March 21, 1947,[1] " * * * by virtue of the authority vested in me by the Constitution and statutes of the United States, including the Civil Service Act of 1883 (22 Stat. 403), as amended, and Section 9A of the [Hatch] act approved August 2, 1939 (18 U.S.C. 61i), and as President and Chief Executive of the United States * * *." Among the recitals and provisions of the Executive Order are the following:

" * * * it is of vital importance that persons employed in the Federal service be of complete and unswerving loyalty to the United States * * *

\* \* \* \* \* \*

" * * * maximum protection must be afforded the United States against infiltration of disloyal persons into the ranks of its employees, and equal protection from unfounded accusations of disloyalty must be afforded the loyal employees of the Government * * *

\* \* \* \* \* \*

"There shall be a loyalty investigation of every person entering the civilian employment of any department or agency of the executive branch of the Federal Government.

\* \* \* \* \* \*

"The Loyalty Review Board shall currently be furnished by the Department of Justice the name of each foreign or domestic organization, association, movement, group or combination of persons which the Attorney General, after appropriate investigation and determination, designates as totalitarian, fascist, communist, or subver-

1. 5 U.S.C.A. § 631 note.

sive, or as having adopted a policy of advocating or approving the commission of acts of force or violence to deny others their rights under the Constitution of the United States, or as seeking to alter the form of government of the United States by unconstitutional means.

"a. The Loyalty Review Board shall disseminate such information to all departments and agencies."

The President's directive contains the further provision that among the activities and associations of an applicant or employee which may be considered in determining disloyalty are membership in, affiliation with or sympathetic association with, any organization designated as subversive by the Attorney General.

Acting under the instructions of the Executive Order and for the purpose of aiding in the attainment of its objectives, the Attorney General advised the Loyalty Review Board on November 24, 1947, that he had designated the appellant, International Workers Order, Inc. (IWO), as subversive.

After this designation had been made, IWO sued the Attorney General and the Loyalty Review Board in the United States District Court for the District of Columbia praying the court to declare unconstitutional § 9A of the Hatch Act [2] as construed and applied by Executive Order No. 9835 and by the appellees, and praying the court also to hold the Executive Order unconstitutional, both on its face and as construed and applied by the appellees. Further relief sought was an injunctive order requiring the removal of IWO's name from the subversive list and restraining the appellees from further designating or publicizing IWO as a subversive organization.

The appellant, IWO, described itself in its complaint as a fraternal organization issuing policies of insurance to its members. It alleged that it was not afforded a hearing before it was branded as subversive by the Attorney General, that it is in fact not subversive, but that because of being designated as such it has lost certain tax exemptions, has been subjected to investigation by the insurance departments of certain states in which it issues policies of insurance, many of its members have resigned and cancelled their insurance, many prospective members have declined to join, and some members have been subjected to charges of disloyalty or have been dismissed from the government service because of their membership in the appellant organization. Other ill consequences were alleged at length.

Arthur L. Drayton, an employee of the Post Office Department, moved to be permitted to intervene as a plaintiff. He alleged he carried life insurance protection and other benefits in the appellant organization, and averred the Loyalty Board of the Post Office Department had instituted proceedings against him to procure his dismissal from the federal service because of alleged disloyalty said to be evidenced by his membership in IWO. In the intervening petition which he sought to file, Drayton prayed the same relief as that asked by IWO and sought to have the court enjoin the appellees from causing him to be dismissed because of his membership in IWO.

The District Court denied Drayton's motion for leave to intervene and, on appellees' motion, dismissed the complaint on the ground IWO had no standing to sue. Both IWO and Drayton appeal.

Distilled to its essence, IWO's complaint asked the District Court to review the Attorney General's unilateral action, taken under and for the purposes of the Executive Order, in designating it as subversive. Since that action was nothing more than a step in the executive department's loyalty screening program with respect to its employees—with no other direct objective or impact—IWO's real assertion is that it is constitutionally entitled to judicial scrutiny of a part of the government's decisional process on the question whether or not to decline to employ or to retain in its service any of IWO's members whom it suspects of disloyalty.

The appellant, IWO, strongly relies upon Columbia Broadcasting System v. United States, 1942, 316 U.S. 407, 62 S.Ct. 1194,

2. 5 U.S.C.A. § 118j.

86 L.Ed. 1563, as authority for the reviewability of the Attorney General's designation in this case. The Columbia Broadcasting case was one in which the Federal Communications Commission adopted regulations prescribing rules which governed contractual relations between radio stations and the networks. If an applicant for a license had entered into an affiliation contract, the regulations required the Commission to reject his application. If a licensee renewed an affiliation contract, the regulations authorized the Commission to cancel his license. The Supreme Court held those regulations to be reviewable.

In that case the Federal Communications Commission was exercising regulatory power over private business. But here the Executive Order and the action pursuant to it did not represent an exercise of regulatory power over private business or employment. The President did no more than to prescribe conditions to govern executive agencies in the selection of their employees, and to instruct the Attorney General to advise them with respect thereto.[3] To do so, within the limits of his constitutional and statutory authority, was the right and duty of the Chief Executive. The employment and discharge of its civil servants, and the establishment of terms and conditions which must be met by employees or applicants for employment, are internal administrative matters concerning which the United States is free to act as it pleases, without judicial compulsion or restraint at the instance of an outsider such as the appellant, IWO. Compare Friedman v. Schwellenbach, 1946, 81 U.S.App.D.C. 365,

367, 368, 159 F.2d 22, 24, 25, certiorari denied 1947, 330 U.S. 838, 67 S.Ct. 979, 91 L.Ed. 1285, where we said:

"The United States has the right to employ such persons as it deems necessary to aid in carrying on the public business. It has the right to prescribe the qualifications of its employees and to attach conditions to their employment. The War Service Regulation which permits the removal from federal service of one concerning whose loyalty to the government the Civil Service Commission entertains a reasonable doubt undoubtedly was reasonable and proper and the making of it was well within the scope of the authority conferred on the Commission by the Act and the two executive orders. We are not concerned here with the question as to whether Friedman was in fact disloyal. Under the regulation he could be removed from service if the Commission had a reasonable doubt as to his loyalty."

When the Attorney General designated IWO as a subversive organization for the purposes of the Executive Order, he did no more than to advise the executive department in that respect, as he had been directed to do. If he was mistaken as to the true character of IWO, no court can cause him to change his conclusion. The correctness of administrative advice cannot be reviewed by the courts. Employers Group, etc., v. National War Labor Board, 1944, 79 U.S.App.D.C. 105, 143 F.2d 145.

We conclude that the act of the Attorney General in designating an organization as subversive for the purposes of the Executive Order, being a part of the gov-

3. In Perkins v. Lukens Steel Co., 1940, 310 U.S. 113, 128, 129, 60 S.Ct. 869, 877, 84 L.Ed. 1108, the Supreme Court pointed out the distinction between legislation which regulates private business or employment and that which has to do with the government's conduct of its own business: "The Act does not represent an exercise by Congress of regulatory power over private business or employment. In this legislation Congress did no more than instruct its agents who were selected and granted final authority to fix the terms and conditions under which the Government will permit goods to be sold to it. The Secretary of Labor is under a duty to observe those instructions just as a purchasing agent of a private corporation must observe those of his principal. In both instances prospective bidders for contracts derive no enforceable rights against the agent for an erroneous interpretation of the principal's authorization. For erroneous construction of his instructions, given for the sole benefit of the principal, the agent is responsible to his principal alone because his misconstruction violates no duty he owes to any but his principal. The Secretary's responsibility is to superior executive and legislative authority."

ernment's process of exercising its authority to select its employees, and within the scope of the Executive Order, may not be judicially reviewed at the suit of the designated organization.

■■ Moreover, nothing is more firmly settled than the proposition that no person may attack the constitutionality of a statute unless he can show sufficient interest in himself. The rule applies with full force to attempted attacks upon the constitutionality of acts of the departments of government. It is an established principle that a private individual is not entitled to invoke the judicial power to determine the validity of executive or legislative action unless he can show that he has sustained or is immediately in danger of sustaining a direct injury as a result of that action. Ex parte Albert Levitt, 1937, 302 U.S. 633, 58 S.Ct. 1, 82 L.Ed. 493.

[7] Executive Order No. 9835 and the administrative procedures thereunder directly affect nobody except government employees and applicants for government positions. Any injury suffered by IWO because of the Attorney General's subversive designation is an incidental result of the loyalty investigation. Not being directly affected thereby, it lacks the interest which it must have in order to maintain this action. The purpose and effect of the Executive Order and the action of the Attorney General, we said in Joint Anti-Fascist Refugee Committee v. Clark, Attorney General, 1949, 85 U.S.App.D.C. 255, 177 F.2d 79, 83, a suit very similar to this one, "* * * were not aimed at the Committee, but were necessary steps in executing the law and carrying out the loyalty program. It is not unusual for official action, intended for one purpose, to affect adversely others against whom it is not directed. But these unavoidable consequences cannot stay the hand of government. They afford no ground for judicial review. Perkins v. Lukens Steel Co., 1940, 310 U.S. 113, 60 S.Ct. 869, 84 L.Ed. 1108; Ex-Cell-O Corp. v. City of Chicago, 7 Cir., 1940, 115 F.2d 627."

We held the Joint Anti-Fascist Refugee Committee had no standing to maintain the action. For the reasons set forth in that opinion, which it is unnecessary to repeat here, IWO could not maintain this action unless, as to its nature and situation, IWO is sufficiently different from the Refugee Committee to distinguish the two cases, and to show that IWO is affected by the actions of the appellees so directly as to entitle it to assail those actions on constitutional grounds.

It is true that IWO differs from the Refugee Committee in some respects, but in our view those differences do not distinguish the two cases. The Committee was an unincorporated association dependent for financial support upon voluntary contributions, while IWO is a business corporation with income from insurance premiums which it says has been impaired by the action of the appellees. It has, therefore, a property right which is legally protected, as it claims, but nevertheless the statute and the Executive Order have not been "applied" to IWO by the appellees; that is to say, IWO's property right in its income from insurance premiums has not been directly affected by the action taken under the Executive Order. And if the Commissioner of Internal Revenue has revoked IWO's tax exemptions because the Attorney General designated it as subversive, he did not do so under the direction of the President's Order. With respect to that grievance IWO must find its remedy in administrative or judicial review of the Commissioner's action, in which no doubt it can have a hearing as to whether it is in fact subversive. In like manner, any investigation of IWO by the insurance departments of the states in which it does business, which may have been induced by the Attorney General's subversive designation, were not undertaken by those departments pursuant to the Executive Order. Undoubtedly the state insurance departments will afford hearings to IWO before penalizing it as subversive. So it is with all the injuries which IWO claims to have suffered; none of them is the direct result of the action of the appellees.

Since IWO's complaint sets forth no injury which it sustained as a direct result of the appellees' action under the Executive

Order, we hold it could not maintain this action.

■ We turn next to Drayton's appeal from the order of the District Court which denied him leave to intervene. Rule 24 of the Federal Rules of Civil Procedure [4] governs intervention. Obviously Drayton could not intervene of right under section (a) of Rule 24, and did not attempt to do so; he expressly relied upon section (b). The permissive intervention dealt with in section (b) is a matter of discretion with the trial court, and refusal to allow it is reversible error only in case abuse of discretion clearly appears. Allen Calculators, Inc., v. National Cash Register Co., 1944, 322 U.S. 137, 64 S.Ct. 905, 88 L.Ed. 1188.

■ Appellants urge that Drayton's "proposed cause of action presents questions of law and fact common with the main action and that his right to relief against the main and proposed defendants arises out of the same transactions and occurrences as are presented in the main action." Even if the District Court could have justifiably permitted Drayton to intervene, we are not prepared to say the denial of leave to do so was an abuse of discretion. Indeed the question is not properly before us, for neither the denial of Drayton's motion nor the dismissal of IWO's complaint operated as an adjudication of Drayton's rights, whatever they may be; and neither barred him from instituting an original action of his own. That being so, the order denying leave to intervene was not a final order and was not appealable. Allen Calculators, Inc., v. National Cash Register Co., supra; Cameron v. President and Fellows of Harvard College, 1 Cir., 1946, 157 F.2d 993; Cresta Blanca Wine Co. v. Eastern Wine Corp., 2 Cir., 1944, 143 F.2d 1012.

Affirmed as to appeal of International Workers Order; Drayton's appeal dismissed.

EDGERTON, Circuit Judge (dissenting).

The court is holding that a corporation which alleges grave and irreparable financial injury caused by a permanent government regulation has no standing to litigate the question whether its constitutional rights are denied, though the regulation was adopted without a hearing and the complaint alleges that it is factually untrue. I think this erroneous for the reasons stated in my dissent in Joint Anti-Fascist Refugee Committee v. Clark.[1] In addition to the cases there cited, La Crosse Telephone Corp. v. Wisconsin, 336 U.S. 18, 69 S.Ct. 379, shows that the appellant corporation has standing to sue. Its standing is, I think, even clearer than that of the appellant in the Joint Anti-Fascist case. I think it immaterial that the regulation here attacked as unconstitutional deals immediately with public business. The Lukens case, 310 U.S. 113, 60 S.Ct. 869, 84 L.Ed. 1108, is irrelevant because no regulation was there attacked as unconstitutional.

In my opinion the District Court erred in denying the motion of appellant Drayton to intervene. Disloyalty proceedings had been brought against him solely because of his membership and activity in the appellant corporation.[2] As he says in his motion, "(1) applicant's claim and the main action have questions of law and fact in common, and (2) there is asserted against the proposed defendants a right of relief arising out of the same transaction, occurrence or series of actions and occurrences." As he says in his proposed complaint, "Plaintiff has no administrative remedy since all of the defendants hold that the designation of the Order is final and conclusive with respect to the status, character and rights of the Order not only as to them but as to plaintiff as well and that plaintiff

4. 28 U.S.C.A.

1. 85 U.S.App.D.C. 255, 177 F.2d 79; certiorari granted 339 U.S. 910, 70 S.Ct. 573.

2. After this appeal was argued, and in response to an inquiry from the bench during the argument of Washington et al. v. McGrath, No. 10413, the Department of Justice informed us that a finding of "reasonable grounds for belief" that Drayton is disloyal has been made by the Post Office Department Loyalty Board and affirmed by the Postmaster General.

374

may not at any state of the administrative process be heard with respect thereto." The Attorney General's ruling that the corporation is subversive concludes that question in loyalty proceedings against its members.[3] It was unlikely that the corporation could represent Drayton's interest adequately, for this court held in the Joint Anti-Fascist case that no organization designated by the Attorney General as subversive can assert a claim in behalf of its members; "only the members themselves are entitled to complain of any personal injuries they may suffer."[4]

"The permissive nature of * * * intervention necessarily implies that, if intervention is denied, the applicant is not legally bound or prejudiced by any judgment that might be entered in the case. He is at liberty to assert and protect his interests in some more appropriate proceeding."[5] No other "appropriate proceeding" was available to Drayton, and no showing was made that his intervention would "delay or prejudice the adjudication of the rights of the original parties."[6] I think the District Court's refusal to permit him to intervene was an abuse of discretion.

3. Loyalty Review Board, Memorandum No. 2, March 9, 1948.
4. 85 U.S.App.D.C. 255, 259, 177 F.2d 79, 83.
5. Brotherhood of Railroad Trainmen v.

Baltimore & Ohio R. R., 331 U.S. 519, 524, 67 S.Ct. 1387, 1390, 91 L.Ed. 1646.
6. Rule 24(b), Federal Rules of Civil Procedure.