Jim **ROBINSON** et al., Plaintiffs,

v.

**J.** Stanley **POTTINGER**, Assistant Attortorney General of the United States of America, Civil Rights Division, et al., Defendants,

v.

William P. **NUNN** et al., Interveners.

Civ. A. No. 74–49–N.

United States District Court,
M. D. Alabama, N. D.

May 31, 1974.

**616**

Charles A. Stakely and Joseph D. Phelps, Montgomery, Ala., for plaintiffs.

Gerald W. Jones, Atty., Justice Dept., Washington, D. C., and Ira DeMent, U. S. Atty., Montgomery, Ala., for defendants.

William R. Gordon, Montgomery, Ala., for interveners.

ORDER

VARNER, District Judge.

This cause is submitted on motion to dismiss the Attorney General and his Assistant from the complaint for declaratory judgment filed by the Plaintiffs, Mayor of Montgomery, Alabama, and others, purporting to represent the class of all registered and qualified voters and citizens of Montgomery, Alabama, seeking a declaratory judgment as to the constitutionality of §§ 1.07, 3.02, 4.01 and 4.02 of Act 618, Acts of the Alabama Legislature, Reg. Sess., 1973.

Allegedly, the claim arises because of the wording of the Defendant Attorney General's [1] response to the submission of said Act to the Attorney General for his consideration as to whether or not said Act disturbed the racial balance of the electoral units in the municipality of Montgomery, pursuant to § 5 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973c. It is alleged that, pursuant to § 5 of the Voting Rights Act of 1965, an attorney for the City of Montgomery submitted to the Attorney General of the United States those certain changes in election procedures resulting from the passage of Act 618, Acts of the Alabama Legislature, Reg. Sess., 1973. That Act would change the form of government for the City from a commission form to a mayor-council form. The pertinent sections which give rise to the controversy here presented are §§ 1.07, 3.02, 4.01 and 4.02.

In response to the City Attorney's submission, Hon. J. Stanley Pottinger, Assistant Attorney General of the United States, on behalf of the Attorney General, advised the City Attorney of Montgomery that the Attorney General did not interpose an objection to the changes involved. However, said Assistant Attorney General did point out that possible constitutional questions arose from the facts, first, that the Act possibly diluted minority voting strength by requiring a majority for election and, second, that the requirement of qualify-

---

1. Both the Attorney General and the Assistant Attorney General, who responded for him, are named as Defendants and are parties to said motion.

ing fees possibly violated equal protection to those unable to pay the same.[2]

Plaintiffs aver that the mechanics of submitting the Act to the voters of the City of Montgomery for referendum are ready for implementation. They allege, however, that the response of the Attorney General by and through his Assistant has placed a cloud of uncertainty over the Act; that questions of constitutionality of said Act are of vital public importance; that it is in the public interest for these questions to be determined at the earliest possible time; and that the Plaintiffs and members of their class as the electorate of the City of Montgomery will suffer irreparable injury unless these constitutional questions are determined forthwith. Apparently, the Plaintiffs take the position that the political future of the Act on referendum has been seriously impaired by virtue of the unfortunate, though well-meaning, comment of the Assistant Attorney General and that, only by virtue of a declaration of constitutionality or unconstitutionality of that statute, may the status quo be re-established. The Plaintiffs seek that this Court issue a declaratory judgment determining the constitutionality of said Act and its various aspects.

The suit was filed against the Assistant Attorney General, the Attorney General of the United States, and the Probate Judge of Montgomery County, Alabama, who is alleged to be charged by virtue of his office with the responsibility of receiving nominations and administering elections in the City of Montgomery, including the referendum in question. The Defendants Saxbe and Pottinger challenge this Court's jurisdiction to hear the cause against them by motion to dismiss raising the following questions: (1) do the Plaintiffs have standing to bring the suit; (2) does the present action present a "case or controversy" within the meaning of the declaratory judgment law; and (3) does the doctrine of sovereign immunity preclude the instant suit insofar as the Defendants Saxbe and Pottinger are concerned.

### CASE OR CONTROVERSY

Apparently, the Assistant Attorney General acted in a spirit de bono publico and intended no harmful effects in suggesting possible constitutional deficiencies in the Act. His suggestions were well intended, and they may ultimately be most helpful. However, those comments were an unnecessary part of his public utterance possibly contemplated by 42 U.S.C. § 1973, and they may reasonably be expected to be utilized by opponents of the proposed form of government toward the end of delay, if not defeat, of the proposed change. Doubtful constitutionality is a political, as well as a judicial, problem. Obviously, the proponents of the change have a political problem in securing the voters' approval of a proposed change considered constitutionally questionable by so august a personage as the Attorney General of the United States, or his Assistant. Arguably, the right of the voters of the City of Montgomery to freely elect the City's form of local government has been interfered with by an act of the Assistant Attorney General done in the Attorney General's name, and, arguably, the possibility, indeed the probability, of the defeat of the referendum has been tremendously increased by publication of the possible constitutional deficiency. Only by a judicial determina-

2. The Attorney General's letter cites as authority for questioning constitutionality of the Act the following cases: Graves v. Barnes, 343 F.Supp. 704 (W.D.Tex.1973), affm'd. sub nom.; White v. Regester, 412 U.S. 755, 93 S.Ct. 2332, 37 L.Ed.2d 314 (1973); Sims v. Amos, 336 F.Supp. 924 (M.D.Ala.1973); Dunston v. Scott, 336 F. Supp. 206 (E.D.N.C.1973); Bullock v. Carter, 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92, (1972); Jenness v. Little, D.C., 306 F. Supp. 925 (1970); Thomas v. Mims, D. C., 317 F.Supp. 179 (1970). Since the filing of the suit, the Supreme Court of the United States held that, absent alternative reasonable means of ballot access, a State may not constitutionally require filing fees from a candidate unable to pay the same. Lubin v. Panish, 42 U.S.L.W. 4435, 415 U.S. 709, 94 S.Ct. 1315, 39 L.Ed.2d 702.

tion of the questions raised by the Attorney General may the status quo possibly be re-established.

■ The Administrative Procedures Act, 5 U.S.C. § 702, is relied upon to give this Court jurisdiction of this cause. The Act reads, in pertinent part, as follows:

"A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."

A "legal wrong" means such wrong as particular statutes and the courts have recognized as constituting grounds for judicial review. Kansas City Power & Light Co. v. McKay, 96 U.S.App.D.C. 273, 225 F.2d 924, cert. den. 350 U.S. 884, 76 S.Ct. 137, 100 L.Ed. 780. This legal wrong must have an adverse effect or aggrievement within the meaning of a relevant statute. Paducah Jr. College v. Secretary of Health, Education & Welfare, D. C., 255 F.Supp. 147.

It may be argued that this is no attempt to review an agency action, that the purpose of the complaint in this cause is to secure a determination of the constitutionality of an act, and that the agency action simply provided the motivation therefor. This suit, therefore, may not fall within the purview of the Administrative Procedures Act in the sense of reviewing and correcting any such procedure unless this Court has a right or duty to correct a legal wrong effected by the response of the Attorney General to the submission of the City of Montgomery. Indeed, the voters of the City of Montgomery are "adversely affected" by said response, and the response, though extending beyond the meaning of the "relevant statute" of the United States Code, Title 42, § 1973c, was nonetheless submitted within the meaning of the relevant statute, that is, within the outer perimeter of the duties of the Attorney General as proposed in the statute. Other than the correction of the alleged interference, no direct relief is sought—nor can it be sought—against the Attorney General and his Assistant. While the Assistant's suggestion obviously adversely affected the rights of the voters of the City of Montgomery in that it cast a cloud of uncertainty not theretofore existing over the proposed referendum, it is not suggested that the mere suggestion of the doubtful constitutionality of a law affords or could afford a cause of action in the usual sense of the term. However, in the sense that the voters were adversely affected in their right to a free election by the remark of the Assistant, this Court has a duty under the Administrative Procedures Act to review the report of the Attorney General in an effort to remove the cloud of uncertainty so created. The Plaintiffs seek to nullify that part of the Attorney General's response which suggested unconstitutionality of the Act. This they have a right to do under the Administrative Procedures Act, as this Court understands it.

### STANDING

■■ The Defendants insist that the Plaintiffs lack standing to bring this suit. The right to review of an agency action is usually restricted to persons whom the agency regulates or affects adversely. Lee v. Civil Aeronautics Board, 96 U.S.App.D.C. 299, 225 F.2d 950. No person may ordinarily attack the constitutionality of a statute unless he can show that he himself is adversely affected by the alleged unconstitutionality. International Workers' Order v. McGrath, 86 U.S.App.D.C. 287, 182 F.2d 368; Duehay v. Acacia Mutual Life Ins. Co., 70 App.D.C. 245, 105 F.2d 768; Oklahoma City v. Dulick, 10 Cir., 318 F.2d 830; NAACP v. Bennett, D.C., 178 F.Supp. 191; Alabama State Federation of Labor, et al. v. United Brotherhood of Carpenters et al., 325 U.S. 450, 65 S.Ct. 1384, 89 L.Ed. 1725. The purpose of this rule is to prevent the flooding of courts with hypothetical litigation brought by persons having no property interests in the outcome of the litiga-

tion. Here the Plaintiffs, voters of the City of Montgomery, face the obvious expenses of an election to validate a form of government approved by an Act of the Legislature subject only to referendum by the voters of the City of Montgomery. The expression by the Attorney General's office that the Act is unconstitutional allegedly adversely affects the right of the voters to have a free election uninfluenced by official comment. If the Act is unconstitutional, the election will be a substantial waste of money of the City of Montgomery. It may be argued that a voter and taxpayer in a city, the funds of which are being squandered needlessly, has as much interest therein as does a stockholder of a corporation of which the funds are being squandered.

■ A private citizen has been found to have standing to insure that his city complies with § 1973c, Allen v. State Board of Elections, 393 U.S. 544, 89 S. Ct. 817, 22 L.Ed.2d 1. It follows that a private citizen has the standing to bring a suit to insure that he shall not, by virtue of an unconstitutional act (passed though not actually effectuated by referendum) be deprived of his right to legally vote in the next election. The voters' interest is that an invalid election shall not be held, and an election to effectuate an unconstitutional act is an invalid election. This Court is, therefore, of the opinion that the class composed of the voters of the City of Montgomery has standing to seek redress for judicial review of the response of the Attorney General to the submission by the City Attorney of the City of Montgomery.

## IMMUNITY

■ The Defendant Attorney General insists that he and his Assistant are officially immune from suit in this case. A government official is immune from suits for damages for torts committed within the outer limits of his authority. Barr v. Matteo, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434; Howard v. Lyons, 360 U.S. 593, 79 S.Ct. 1331, 3 L.Ed.2d 1454. The extremes of this principle of law are seen in Gregoire v. Biddle, 2 Cir., 177 F.2d 579, cert. den. 339 U.S. 949, 70 S.Ct. 803, 94 L.Ed. 1363; Norton v. McShane, 1 Cir., 332 F.2d 855, cert. den. 380 U.S. 981, 85 S.Ct. 1345, 14 L.Ed.2d 274. But see Kelley v. Dunne, 1 Cir., 344 F.2d 129.

It is significant that, had the Attorney General objected pursuant to his duties under § 1973c, the City of Montgomery might have filed its suit, pursuant to said § 1973c in the District Court of the District of Columbia. In such a case, an Attorney General has been considered a proper party defendant. State of South Carolina v. Katzenbach, 383 U. S. 301, 86 S.Ct. 803, 15 L.Ed.2d 769.

■ While the act of suggesting constitutional questions was not an act required within the ambit of 42 U.S.C. § 1973c, it may be strongly argued that it was within the outer limits of the authority of the Attorney General to note any possible constitutional questions which might be obvious to him (perhaps so as to avoid implicit approval of an act to which he had no statutory objection). This suit involves no cause of action by which it is sought to extract money directly or indirectly from the Treasury of the United States. It is simply a proceeding whereby it is sought to relieve the aggrieved parties, the voters of the City of Montgomery, of the effect of a semi-official act of the Attorney General by which they were aggrieved. They say that this can be done only by a determination and pronouncement by this Court of the constitutionality or unconstitutionality of the Act in question. This Court is inclined to agree and is, therefore, of the opinion that, while the Attorney General and his Assistant are both officially immune from any suit for damages in this proceeding, they are proper parties in a suit for a declaratory judgment to determine the authenticity, legal effect, and political effect of a pronouncement made by the Assistant Attorney General in an official response by the Attorney General to the City Attorney of the City of Montgomery.

While others have intervened in the cause who could reasonably be expected to represent the interests suggested by the Attorney General, the primary interests in protecting the integrity of his response rests in the person who made the response, that is, the Attorney General and his Assistant. Accordingly, the defense of immunity is insufficient in this proceeding. It is, therefore, the

Order, judgment and decree of this Court that the motion to dismiss of the Defendants Saxbe and Pottinger be, and the same is hereby, denied.