Kendrick M. COLE, Plaintiff,

v.

Philip YOUNG, Chairman, United States Civil Service Commission, et al., Defendants.

Civ. A. No. 2296-54.

United States District Court
District of Columbia.

Oct. 26, 1954.

James H. Heller, Washington, D. C., and David I. Shapiro, New York City, for plaintiff.

Donald B. MacGuineas, Atty., Department of Justice, Washington, D. C., for defendants.

HOLTZOFF, District Judge.

The plaintiff in this action challenges the legality of the procedure for the removal of Government employees in the interest of national security.

The plaintiff was a Food and Drug Inspector, employed by the Food and Drug Administration of the Department of Health, Education and Welfare. Pursuant to the applicable statute and Executive Order, which are hereafter referred to in greater detail, after an interview in which he was interrogated at length, he was served with charges to the effect that he established and continued a close association with individuals reliably reported to be Communists, and maintained a continued and sympathetic association with an organization which was included in the Attorney General's list of subversive groups. He was accorded an opportunity to submit an answer, but declined to do so. The proceedings concluded with a termination of his services by the head of the Department, on the ground that his continued employment was not clearly consistent with the interests of national security.

The plaintiff brings this action to secure reinstatement to his position, claiming that the Executive Order, pursuant to which he was removed, was invalid and that the procedure followed in severing his connection with the Government 'was not in accordance with law. The pertinent facts are not in dispute and are set forth in the pleadings. Both sides moved for judgment on the pleadings, and the case came on for a hearing on these cross-motions.

The basic statute, under which the plaintiff was removed from office, is the Act of August 26, 1950, 64 Stat. 476, 5 U.S.C.A. § 22–1. Its pertinent portions read as follows:

"*Notwithstanding the provisions of section 652* of this title, *or the provisions of any other law*, the Secretary of State; Secretary of Commerce; Attorney General; the Secretary of Defense; the Secretary of the Army; the Secretary of the Navy; the Secretary of the Air Force; the Secretary of the Treasury; Atomic Energy Commission; the Chairman, National Security Resources Board; or the Director, National Advisory Committee for Aeronautics, may, *in his absolute discretion and when deemed necessary in the interest of national security*, suspend, without pay, any civilian officer or employee of the Department of State (including the Foreign Service of the United States), Department of Commerce, Department of Justice, Department of Defense, Department of the Army, Department of the Navy, Department of the Air Force, Coast Guard, Atomic Energy Commission, National Security Resources Board, or National Advisory Committee for Aeronautics, respectively, or of their several field services: * * *."
(Emphasis supplied.)

The statute prescribes the procedure to be followed in notifying the employee of the reasons for his suspension and giving him an opportunity to submit statements and affidavits in opposition within 30 days after such notification. It further provides for a hearing, then for a review of the case by the agency head or some official designated by him, and finally for a written statement of the decision of the agency head, whose determination was to be final. The statute concludes, 5 U.S.C.A. § 22–3, as follows:

"The provisions of sections 22–1 to 22–3 of this title shall apply to such other departments and agencies of the Government as the President may, from time to time, deem necessary in the best interests of national security. * * *"

To summarize succinctly the pertinent provisions of the Act, it empowers

the heads of the specified Government departments and agencies in their absolute discretion and when deemed necessary in the interests of national security, to suspend any officer or employee of that department or agency, and then, after completion of the specified procedure, to remove him from office. The President is authorized to extend the statute to such other departments and agencies as he may deem necessary in the best interests of national security.

◼ Acting pursuant to this authority, the President on April 27, 1953, issued Executive Order No. 10450, 5 U.S.C.A. § 631 note, which extended the provisions of the Act "to all other departments and agencies of the Government." This direction is preceded by a recital that the President deemed such action necessary in the best interests of national security. An examination of this Executive Order and its comparison with the statute, inescapably lead to the conclusion that the Order is within the orbit of the Act of Congress. The statute authorized the President to extend it to such other departments and agencies as he might from time to time deem necessary in the best interests of national security. On the basis of a finding that he deemed such action necessary in the best interests of national security, he extended the provisions of the Act to all other departments and agencies of the Government, that is to all departments and agencies of the executive branch of the Government in addition to those enumerated in the Act. This he had the power to do under the very terms of the statute.

◼◼ It must be recalled that Article II, Section 1, of the Constitution provides that "The executive Power shall be vested in a President of the United States of America". Section 3 of Article II provides that, "he shall take Care that the Laws be faithfully executed". Under the authority vested in him by these two provisions, the President is empowered to remove in his own discretion any officer or employee of the Executive branch of the Government whom he or any of his predecessors has appointed.[1] The head of an executive department or agency may pursue a similar course as to the employees appointed by him or his predecessors, except to the extent that this power is limited by an Act of Congress. In the early years of the Republic it was not customary to remove Government officers or employees, but it was assumed that they would continue in their positions indefinitely. In fact, history records that President Thomas Jefferson in reply to an importunity for an appointment to office, replied that there were no vacancies because "few die and none resign". With the advent of President Andrew Jackson, the policy of the Government radically changed. From that time on, it was customary for an incoming administration to make numerous changes in the personnel of Government departments and agencies purely for political reasons and for purposes of patronage. Holding political views contrary to those of the administration in power was considered sufficient ground for removal from office. As the complexities of Government increased, the realization gradually grew that the development of a career service was necessary both from the point of view of efficiency and from the standpoint of justice to individual employees. The result was the enactment of the Civil Service Act, which provided that no one within a group of employees known as the Classified Civil Service, should be subject to removal except on charges, or in case of a reduction in force, 5 U.S.C.A. § 652. Later the Veterans' Preference Act was passed. It barred the removal of any Government officer or employee who was a war veteran, except under certain specified conditions, 5 U.S.C.A.

1. Myers v. United States, 272 U.S. 52, 47 S.Ct. 21, 71 L.Ed. 160. An exception has been developed in respect to members of administrative commissions on the ground that they are quasi-administrative and quasi-judicial, Humphrey's Executor v. United States, 295 U.S. 602, 55 S.Ct. 869, 79 L.Ed. 1611.

§§ 851, 861, 863. As the two World Wars created several million veterans, the result has been that the vast majority of Government employees have at least a partial security of tenure and are protected from dismissal except under certain specified conditions, either by virtue of the Civil Service Act or the Veterans' Preference Act, or both. It must be emphasized, however, that except as otherwise provided by Act of Congress, every Government employee is subject to removal from office at the will of the Executive.

■ The Act of August 26, 1950, 5 U.S.C.A. § 22–1, is in effect a limitation on the Civil Service Act and the Veterans' Preference Act, and withdraws the protection of these two statutes or any other Act of Congress from any officer or employee whose removal is deemed necessary in the interests of national security. This conclusion is rendered clear beyond peradventure of a doubt by the emphatic introductory clause reading: "Notwithstanding the provisions of section 652 of this title [i. e., the Civil Service Act] or the provisions of any other law [i. e., the Veterans' Preference Act], * * *". Consequently under the Act of 1950, as extended by Executive Order to other Government departments and agencies, any officer or employee of the Executive branch of the Government is subject to removal in the absolute discretion of the head of his department or agency, when deemed necessary in the interests of national security. The rights of the officer or employee in question are safeguarded by requiring the head of the agency to follow a specified procedure before the removal becomes final.

■ We may now proceed to a consideration of the specific objections raised by the plaintiff to the legality of the action of which he complains. First, it is urged that the Act of August 26, 1950, should be construed as being limited to those employees who are "security risks" and as not applicable to employees charged with disloyalty, as was true of the plaintiff. There is manifestly no basis for this contention in the plain, unambiguous wording of the statute. The Act does not refer either to employees who are disloyal, or to employees who are security risks. It authorizes the removal of any employee "when deemed necessary in the interests of the national security". Obviously, this comprehensive phraseology is broad enough to cover both disloyal employees and employees who are security risks. The statute makes no distinction between the two.

■ Plaintiff's counsel seek to support their argument by recourse to the Committee reports concerning this legislation, S.Rept. No. 2158 and H.Rept. No. 2330, 81st Cong. 2d Sess., U.S.Code Congressional Service, 1950, Vol. 2, p. 3278 et seq. It is, of course, the duty of the courts in construing and applying a statute to endeavor to ascertain the intent of the legislative body. If the phraseology of the Act is obscure or ambiguous, the Committee reports are the primary source to which recourse should be had in order to determine the intent of the Congress. If the language of the statute is clear, however, such resort is not necessary. Even if, however, the Committee reports are consulted in this instance, it will be found that they do not sustain the plaintiff's contention. On the contrary, they seem to support the Government's theory that the intent of the Congress was twofold: first, to supply legislative authority for a prior Executive Order issued by the President creating a procedure for the removal of disloyal employees; and second, to extend the power of the President in order to cover employees who are security risks, though not disloyal. Both classes of employees are mentioned in the Committee reports. The Reports state that it is intended that the President's loyalty program should be continued and that the bill was concerned further with the problem of dealing with those Federal employees, who, although loyal, are so careless as to jeopardize the national security.

288

The construction of the Act urged by the plaintiff would lead to an absurd result. Its effect would be to create legislative authority for the removal of employees who are security risks, but not employees who are disloyal. Manifestly, such an illogical outcome could not have been within the contemplation of the Congress. Counsel for the plaintiff seem to be laboring under the notion, which the court deems fallacious, that a disloyal employee constitutes a danger to internal security only if he holds what is denominated as a sensitive position, namely, a position in which he has access to secret information or secret documents. This is far too limited a view of the potential danger from disloyal employees. For example, conceivably it is within the realm of possible contemplation that an employee connected with public water works is in a position in time of emergency to do something that may harm the water supply of the community. Likewise, the actions of a disloyal Food and Drug Inspector may impair the public health. Examples might be multiplied *ad infinitum*. In fact the Committee Reports unequivocally state that "Disloyal persons should not be permitted to be employed in the Federal service under any circumstances. They are not entitled to Federal employment of any kind."

█ It is further argued that the Executive Order of the President is beyond the scope of the statute because instead of enumerating by name the specific agencies that are deemed sensitive, the Order extends the provisions of the Act of 1950 to all Government departments and agencies without referring to them by title. Obviously, if the Executive Order listed every Government agency separately, this objection would have no foundation. Surely, the action of the President in blanketing all Government departments and agencies under the Act in so many words, instead of listing each of them, one by one, does not contravene the power conferred upon him. It must be noted in this connection that the Executive Order contains an express finding that "the interests of the national security require that all persons privileged to be employed in the departments and agencies of the Government shall be reliable, trustworthy, of good conduct and character, and of complete and unswerving loyalty to the United States; * * *."

Again it is further contended in behalf of the plaintiff that the Executive Order transgresses the Veterans' Preference Act, in that it does not provide for the procedure prescribed in that statute. Obviously, however, the Act of 1950, which was enacted subsequently to the Veterans' Preference Act, supersedes the latter *pro tanto* insofar as the two are inconsistent. The Act of 1950 created an exception from the Veterans' Preference Act for the employees covered by the latter, as has already been explained.

It is finally objected in behalf of the plaintiff that the procedure prescribed in Mulligan v. Andrews, 93 U.S.App.D.C. 375, 211 F.2d 28, was not followed. That case, however, was decided under the Civil Service Act and, therefore, is not applicable here.

The court concludes that Executive Order 10450 is valid and that the removal of the plaintiff from office is not subject to attack.

The plaintiff's motion for judgment on the pleadings is denied. The motion of the defendants for judgment on the pleadings is granted.