**JASON**

v.

**SUMMERFIELD, Postmaster
General et al.**

No. 11904.

United States Court of Appeals
District of Columbia Circuit.

Argued April 19, 1954.

Decided June 10, 1954.

Edgerton, Circuit Judge, dissented.

274

Mr. Howard Jenkins, Jr., Washington, D. C., for appellant.

Mr. Joseph A. Rafferty, Asst. U. S. Atty., Washington, D. C., with whom Messrs. Leo A. Rover, U. S. Atty., and Lewis A. Carroll, Asst. U. S. Atty., Washington, D. C., were on the brief, for appellees.

Mr. William J. Peck, Asst. U. S. Atty., Washington, D. C., at time record was filed, entered an appearance for appellees.

Before EDGERTON, WILBUR K. MILLER and DANAHER, Circuit Judges.

DANAHER, Circuit Judge.

Appellant Jason was discharged from the Post Office Department on loyalty grounds. He commenced this action seeking a declaratory judgment and injunctive relief, and from the District Court's order granting appellees' motion to dismiss, he brought this appeal. We are presented with the question whether the government after a Loyalty Review Board decision that reasonable grounds did not exist to believe the appellant disloyal under the standard set forth in Executive Order No. 9835, 12 F.R. 1935, 3 C.F.R., (Supp.1947), 5 U.S.C.A. § 631 note, could later, on the same charges, reexamine and determine his loyalty status according to a different standard contained in Executive Order No. 10241, 16 F.R. 3690, 3 C.F.R. 431 (Supp.1951), U. S. Code Congressional and Administrative News 1951, p. 1028.

I

" * * * reasonable grounds exist for belief that the person involved is disloyal. * * * "

Appellant had been a classified civil service regular clerk in the Philadelphia, Pennsylvania, Post Office from 1923 until 1945 when he became a national officer of a labor organization recognized by the Post Office Department. Since 1949 he devoted full time to his organization duties, on leave without pay pursuant to Department permission.

In 1948 appellant was served with a Notice of Proposed Removal Action pursuant to the provisions of Executive Order No. 9835, setting forth certain charges of disloyalty to the government.[1]

Appellant filed an answer, a hearing was held on February 28, 1949, and the Department Loyalty Board found, on September 6, 1949, that reasonable grounds did exist for belief that appellant was disloyal. An appeal was then taken to the Postmaster General who found after further hearing, that reasonable grounds existed for believing that appellant was disloyal. On appeal to the Loyalty Review Board in the Civil Service Commission it was concluded on November 2, 1950 that reasonable grounds did not exist for believing that appellant was disloyal. In reversing the rulings of the Department Loyalty Board and of the Postmaster General, the Loyalty Review Board construed and applied as the test or standard for removal the provision from Executive Order No. 9835 that "reasonable grounds exist for belief that the person involved is disloyal to the Government of the United States." The Board recommended that appellant be restored to his position and the Postmaster General then concurred.

1. The notice read in part: "As a result of a recent investigation made of you as an employee of the Post Office Department, under the provisions of the abovementioned Executive Order, information has been received which indicates that you have been and that you are affiliated or sympathetic with an organization, association, movement, group, or combination of persons designated by the Attorney General as subversive, and on the basis of this evidence reasonable grounds exist for belief that you are disloyal to the government of the United States. * * * " Then followed ten specific charges in all, drafted according to the requirements of Title 5 U.S.C.A. § 652.

## II

*"There is a reasonable doubt as to the loyalty of the person involved. * * *"*

On April 28, 1951 Executive Order No. 9835 in one important particular, was amended by Executive Order No. 10241, but in all other respects was continued in full force and effect. The "reasonable grounds" standard was eliminated, and in lieu thereof the Order prescribed that the standard to be applied should read: "There is a reasonable doubt as to the loyalty of the person involved to the Government of the United States." [2] On May 23, 1951, the Loyalty Review Board issued its Memorandum No. 66 which provided: "Each department or agency loyalty board having jurisdiction shall adjudicate under the standard of Executive Order No. 10241 all loyalty cases in which unfavorable determinations made by any board were reversed on appeal prior to May 1, 1951, provided the individuals concerned are still employed in the department or agency."

Thereafter, pursuant to the quoted instructions the Department Loyalty Board served on the appellant, on January 10, 1952, a new Notice of Proposed Removal Action.[3] Appellant filed his answer, and after a hearing on May 5, 1952 before the Department Loyalty Board and a finding by the Board on August 7, 1952 that "there is a reasonable doubt as to your loyalty to the government of the United States," appellant appealed to the Postmaster General. On December 9, 1952 the Postmaster General issued a similar finding and affirmed the findings and recommendations of the Department Loyalty Board. The decision of the Loyalty Review Board after hearing on appeal, affirmed the decision of the Postmaster General on April 2, 1953, requested that appellant be separated from the service, and on April 10, 1953, appellant was notified of his removal from the Post Office Department. Appellant then commenced this action.

## III

Appellant's principal contention is that the decision of the Loyalty Review Board in the 1949 hearing precluded re-examination in the 1952 hearing on the same charges under the standard set up in Executive Order No. 10241. We find this contention untenable. In *Churchill Tabernacle v. Federal Communications Commission,* 1947, 81 U.S.

2. Actually this was not a new standard. The President simply readopted the standard of loyalty which had been applied throughout World War II and up to March 21, 1947 when Executive Order No. 9835 was issued. War Service Regulation II, Section 18.2(c), 7 F.R. 7723 (1942), in pertinent part had provided:

"An applicant may be denied examination and an eligible may be denied appointment for any one of the following reasons: * * *

* * * * *

"(7) A reasonable doubt as to his loyalty to the Government of the United States; * * *

* * * * *

"Any of the reasons stated in the foregoing subdivisions from (b) through (h) inclusive, shall be sufficient cause for removal from the service."

3. This new notice apprised the appellant that the "new" standard as contained in Executive Order No. 10241 had been issued, that the Department Loyalty Board had been directed to reopen certain cases including that of the appellant, and then continued in pertinent part:

"While your case was disposed of under the standard set forth in Executive Order No. 9835 and an investigation was heretofore made of you as an employee of the Post Office Department, an adjudication of your case is now required under the provisions of Executive Order No. 10241 and Loyalty Review Board Memorandum No. 66. The information received as a result of the investigation previously made of you indicates that you have been or that you are affiliated or sympathetic with an organization, association, movement, group, or combination of persons designated by the Attorney General as subversive, and on the basis of this evidence there is a reasonable doubt as to your loyalty to the government of the United States. * * *"

Then followed the same ten specific charges which had been set forth in the earlier Notice of Proposed Removal Action. See note 1, supra.

App.D.C. 411, 160 F.2d 244, 246, we rejected an extension of the principle of *res judicata* to administrative proceedings. Speaking for this Court, Chief Justice Groner pointed out that it is well settled "that *res judicata* and equitable estoppel do not ordinarily apply to decisions of administrative tribunals * * *." He cautioned against "[transplanting] into the realm of administrative law rules of procedure, trial and review which have evolved in the history and experience of courts." Id. 81 U.S.App.D.C. at page 413, 160 F.2d at page 246.

Even were we inclined to disregard the cogent observations of that distinguished jurist, and we are not, the language of the standard set out in Executive Order No. 10241 cannot be ignored. A markedly different legal situation was presented.[4]

When the Loyalty Review Board considered appellant's case under the standard found in Executive Order No. 9835, the ultimate fact which was the subject of inquiry was *disloyalty*, disloyalty to the government of the United States. The standard did not deal in terms with grounds which might have existed in the past for a finding that some person had at some earlier time been disloyal. Rather, the Board was bound in the exercise of prudence and caution to determine whether or not the facts and circumstances established a "belief"—that is, a present or immediate assurance of "disloyalty." The tense of the verbs used, "exist" and "is," was the present tense. The "reasonable grounds" had to be actually or really in being, *presently*, at the time of review. The "belief" was not some past belief but a then existent belief. The evidence, the mass of details, the facts and the inferences appropriately to be drawn therefrom had to be tested by the standard to be derived from the words employed to state it. Cumulatively all factors had to culminate in a justifiable conclusion of present disloyalty. It is not a simple matter now, nor was it in 1949 for any Board to say that a person involved is disloyal.

Quite different was the test which the Board was to apply under the prescription of Executive Order No. 10241:

"The standard for the refusal of employment or the removal from employment in an executive department or agency on grounds relating to loyalty shall be that, on all the evidence, there is a reasonable doubt as to the loyalty of the person involved to the Government of the United States."

The Board's duty at the second review was thus to inquire whether or not on all the evidence there existed a reasonable basis for a present doubt. But that doubt, if any, was to operate in relation to an ultimate fact of *loyalty*, not disloyalty. The word "doubt" implies an unsettled state of opinion concerning the reality of an event, or the truth of an assertion, or as in this case, a doubt as to the loyalty of the person involved. Stated otherwise, the Board was no longer to be bound to inquire as to whether the proof reasonably was sufficient to convince and direct its understanding and to satisfy its reason and judgment as to disloyalty. Rather, the amended standard applied a more rigid test of suitability for government employment. It contemplated the possible existence of proof or information which, while not capable of inducing a belief that the person "is disloyal," does cause a reasonable doubt as to whether he is in fact loyal.

Appellant would have us say that the two standards mean the same thing, that the amended standard changed nothing, and he so argued, even as he hastened to assure us that he could not expect that the President would do a vain thing. Throughout World War II, the standard prescribed under Executive Order No. 10241 had prevailed. In 1947 the wartime standard was replaced by that provided in Executive Order No. 9835.

4. Cf. State Farm Mutual Auto Insurance Co. v. Duel, 1945, 324 U.S. 154, 162, 65 S.Ct. 573, 89 L.Ed. 812.

Whether it was because of the war in Korea and the President's declaration of the existence of an emergency in 1951, or whether the President felt that the Board was placing a more narrow interpretation than he intended on the "present" disloyalty construction of Executive Order No. 9835 or for some other reason, the fact remains that he struck down the standard found in Executive Order No. 9835 and re-promulgated the World War II standard found in Executive Order No. 10241. The two are quite different, both in language and in effect, and with appellant, we cannot say that the President did a vain thing.

Moreover, there is no vested right in federal employment, and except as restricted by law, the Executive must enjoy wide discretion in determining hiring and firing policies. See Bailey v. Richardson, 1950, 86 U.S.App.D.C. 248, 253, 259, 182 F.2d 46, affirmed by an equally divided court, 1951, 341 U.S. 918, 71 S.Ct 669, 95 L.Ed. 1352, and cases there cited. We can rightfully no more prevent the Executive from *reconsidering* the standards to be applied in determining the loyalty of federal employees than prescribe the tests in the first place.

One point remains to be noticed. After Executive Order No. 10241 was issued April 30, 1951, the Loyalty Review Board promulgated on May 10, 1951 Memorandum No. 65 addressed to all executive departments and agencies on the subject of "reopening loyalty cases under Executive Order No. 10241 when an individual receives a new appointment in the federal service." The Board took note of the amended standard of Executive Order No. 10241 and advised of its program to review the case of an individual receiving a *new* appointment notwithstanding that previously as to such persons, "adjudications should not be subject to more than one adjudication on the same set of facts." Appellant was not a person receiving "a new appointment," so that he was not affected by Memorandum No. 65. One week was to pass before the Board met to consider

its policy with reference to other categories of federal employees.

On May 17, 1951, the Loyalty Review Board met to consider cases such as that of the appellant as well as of federal employees falling into certain other categories. There were some 9300 individuals involved.

On May 23, 1951, the Loyalty Review Board issued Memorandum No. 66 to all executive departments and agencies on the subject "Adjudication under the Standard Established by Executive Order No. 10241 of Loyalty Cases Determined and Closed Prior to May 1, 1951 under Executive Order No. 9835." The Memorandum recited: "The Loyalty Review Board took into consideration that under Article II, Section 2, of the Constitution of the United States, the Acts of Congress thereunder, and the decisions of the courts, heads of departments and agencies have the right to hire and fire employees. Accordingly, the Board recognized that department and agency heads have an inherent right to review any loyalty cases at any time in order to determine the qualifications of any individual for continued employment." The Board further pointed out that by Presidential order the head of each department and agency in the Executive Branch of the government was personally responsible for an effective program to assure that disloyal civilian employees are not retained in employment. Again, pursuant to Presidential order, the Board advised of its purpose to coordinate employee loyalty policies, to achieve uniformity of treatment.

It was against that background, that as to "cases reversed on appeal" the "new standard" was prescribed. The Memorandum also dealt with "cases reviewed in post-audit" and "other cases." Appellant's case clearly fell within the first category. The Board surely possessed authority to issue its Memorandum No. 65 to deal with an individual receiving a new appointment. It was equally within the Board's authority to issue its Memorandum No. 66 to deal

with other categories such as that including the appellant's case. The Board correctly pointed out that the head of each department possesses an inherent right to review any loyalty cases.[5] Indeed, it is the continuing duty of any department or administrative agency to execute its function in such fashion as may be required to effectuate its purposes and to accomplish its objectives. Cf. Wilbur v. United States ex rel. Kadrie, 1930, 281 U.S. 206, 217, 50 S.Ct. 320, 74 L.Ed. 809. There, the Supreme Court considered the power of the Secretary of the Interior in 1927 to reconsider and revoke a decision made in 1919. Flatly ruling that there was no want of power in the circumstances, the Court continued: "The decision in 1919 was, not a judgment pronounced in a judicial proceeding, but a ruling made by an executive officer in the exertion of administrative authority. That authority was neither exhausted nor terminated by its exercise on that occasion, but was in its nature continuing. Under it the Secretary who made the decision could reconsider the matter and revoke the decision if found wrong; and so of his successor." Likewise, in N. L. R. B. v. Seven-Up Bottling Co., 1953, 344 U.S. 344, 73 S.Ct. 287, 97 L.Ed. 377, where Congress had charged the National Labor Relations Board with the task of devising remedies to effectuate the policies of the Act, the Board was said to possess broad discretionary power. "In fashioning remedies to undo the effects of violations of the Act, the Board must draw on enlightenment gained from experience." Id. 344 U.S. at page 346, 73 S.Ct. at page 289.

We have never heard it disputed that employees in fact disloyal to the government may and should be removed. We see no basis for holding that an executive department must retain in the service those whose loyalty is reasonably doubtful. Even under the standard set up by Executive Order No. 9835, the Department Loyalty Board and the Postmaster General had respectively found and affirmed that reasonable grounds existed for the belief that the appellant was disloyal. The President had promulgated that Executive Order as well as the standard here involved. He had the undoubted right by a later Executive Order to define and proclaim the new standard in Executive Order No. 10241.[6]

---

**5.** "[The United States] has the right to prescribe the qualifications of its employees and to attach conditions to their employment." Friedman v. Schwellenbach, 1946, 81 U.S.App.D.C. 365, 367, 159 F.2d 22, 24, certiorari denied, 1947, 330 U.S. 838, 67 S.Ct. 979, 91 L.Ed. 1285 (which considered the very standard here involved). Moreover, Executive Order No. 9835 expressly stated, Part II, par. 1, "The head of each department and agency in the executive branch of the Government shall be personally responsible for an effective program to assure that disloyal civilian officers or employees are not retained in employment in his department or agency."

**6.** This he did in these words:

"EXECUTIVE ORDER 10241

"AMENDING EXECUTIVE ORDER NO 9835 ENTITLED 'PRESCRIBING PROCEDURES FOR THE ADMINISTRATION OF AN EMPLOYEES LOYALTY PROGRAM IN THE EXECUTIVE BRANCH OF THE GOVERNMENT'

"By virtue of the authority vested in me by the Constitution and statutes of the United States, including the Civil Service Act of 1883 (22 Stat. 403) as amended, and section 9A of the act approved August 2, 1939 (5 U.S.C. 118j), and as President of the United States, it is ordered that paragraph 1 of Part V of Executive Order No. 9835 of March 21, 1947, entitled 'Prescribing Procedures for the Administration of an Employees Loyalty Program in the Executive Branch of the Government', be, and it is hereby, amended to read as follows:

" '1. The standard for the refusal of employment or the removal from employment in an executive department or agency on grounds relating to loyalty shall be that, on all the evidence, there is a reasonable doubt as to the loyalty of the person involved to the Government of the United States.'

"HARRY S. TRUMAN
"THE WHITE HOUSE,
April 28, 1951."

Cf. Executive Order No. 10450, 18 F.R. 2489, April 27, 1953, 5 U.S.C.A. § 631 note.

"Reasonably grounded suspicion of disloyalty indicates a risk, and no concept of the Constitution requires the executive to endure recognizable and preventable risks in the administration of the law." Bailey v. Richardson, supra, 86 U.S.App.D.C. at page 263, 182 F.2d at page 61. Hundreds of thousands of persons in government employ whose loyalty is beyond the faintest shadow of suspicion inspire the admiration and respect of the public. All of us can feel more secure and believe it entirely just when procedures are evolved and applied by the Chief Executive to weed out and separate from government service those who are actually disloyal or those as to whom reasonably grounded suspicion of disloyalty exists. No person can be loyal to the political cause of some worldwide conspiratorial movement which plots and seeks the destruction of our form of government and still remain loyal to the American cause. We rule that the President was justified in prescribing as a standard for the refusal of employment or the removal from employment "that, on all the evidence, there is a reasonable doubt as to the loyalty of the person involved to the Government of the United States."

Appellant has not demonstrated, indeed he has not seriously urged, that the removal proceedings against him failed to conform with the procedural requirements of the civil service laws and regulations and the pertinent executive orders. Cf. Williams v. Cravens, 1954, 93 U.S.App.D.C. 380, 210 F.2d 874 and cases there cited.

█ The District Court ordered that appellant's complaint be dismissed for failure to state a claim upon which relief may be granted. With this action we are in accord for the reasons already given. The District Court also decided that it was without jurisdiction of the subject matter and dismissed the complaint on that basis as well. This we think was error. Our own numerous decisions following challenges to the loyalty and other employee removal procedures permit no doubt as to the jurisdiction of the district courts to hear cases such as this. See e. g. United Public Workers v. Mitchell, 1947, 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754; Kutcher v. Gray, 1952, 91 U.S.App.D.C. 266, 199 F. 2d 783; and Deak v. Pace, 1950, 88 U.S. App.D.C. 50, 185 F.2d 997. However, since the complaint was properly dismissed for failure to state a claim for relief, the judgment of the District Court will be

Affirmed.

EDGERTON, Circuit Judge (dissenting).

Since no Executive Order, but only a memorandum of the Loyalty Review Board, undertook to authorize repeated investigations of identical loyalty charges against a government employee, under old standards or new ones, the question whether an Executive Order could do so is not before us. Wholly apart from any possible question of *res judicata*, nothing less than express language in a statute or Executive Order should be regarded as authorizing such repeated investigations, since they gravely injure the employees concerned, shock the sense of justice and the sense of security of other persons in and out of government, and damage the government by lowering morale and by reducing the appeal of public service.