**Kendrick M. COLE, Appellant,**

v.

**Philip YOUNG, Chairman, United States Civil Service Commission, et al., Appellees.**

**No. 12526.**

United States Court of Appeals
District of Columbia Circuit.

Argued April 6, 1955.

Decided July 28, 1955.

Edgerton, Circuit Judge, dissented.

Mr. David I. Shapiro, New York City, of the bar of the Court of Appeals of New York, pro hac vice, by special leave of Court, with whom Mr. James H. Heller, Washington, D. C., was on the brief, for appellant. Mrs. Helen M. Rosenthal, Washington, D. C., also entered an appearance for appellant.

Mr. Donald B. MacGuineas, Washington, D. C., of the bar of the Supreme Court of Illinois, pro hac vice, by special leave of Court, with whom Mr. Samuel D. Slade, Attorney, Department of Justice, was on the brief, for appellees. Mr. John D. Lane, Assistant United States Attorney, also entered an appearance for appellees.

Before EDGERTON, PRETTYMAN and BASTIAN, Circuit Judges.

PRETTYMAN, Circuit Judge.

Appellant Cole was a five-point veterans' preference eligible employed in the classified Civil Service as a food and

drug inspector in the Department of Health, Education and Welfare. After an investigation pursuant to Executive Order 10450 [1] he received a written statement of charges, which were, generally speaking, that he had continued in close association with individuals reliably reported to be Communists and had donated to and attended meetings of an organization designated by the Attorney General under Section 12 of the Executive Order. He replied to this letter, declining to make any explanation of the charges, saying that the request of the Government was an invasion of his private rights and of his right of freedom of association. His letter was forwarded to the Secretary, who ordered that his employment be terminated. Some two weeks later Cole, by his counsel, wrote the Secretary, asking a reopening of the case and stating that if it were reopened he would prove that he had not knowingly had the associations or relations which were alleged. The Secretary denied the reopening and later denied a second request for a reopening. Cole appealed to the Civil Service Commission under Section 14 of the Veterans' Preference Act,[2] but the Director would not accept the appeal. The Commission approved the Director's decision, holding that Act not applicable to dismissals under Public Law 733.[3] Thereupon Cole filed a civil action in the District Court, praying for a declaratory judgment and for an order restoring him to his position. The District Court, with an exhaustive opinion,[4] granted the defendants' motion for judgment on the pleadings, dismissing the complaint for failure to state a claim upon which relief could be granted.

■ Upon his appeal to this court Cole makes three principal points, and the Government makes one additional point, which it raised in its motion for judgment on the pleadings. It says Cole failed to exhaust his administrative remedy and so his action in court must fail. While Cole failed to pursue the administrative remedy offered him—he affirmatively rejected it—nevertheless the administrative process was exhausted and a final administrative decision was reached and rendered. This is the nub of the rule that the administrative remedy must be exhausted. We think the Government's point is not well taken.

■ Cole's first point is that the President could not extend the summary dismissal provisions of Public Law 733 to employees holding non-sensitive, non-policy-making positions in a Department such as Health, Education and Welfare. He makes an extensive argument based upon the congressional debates and several writings in the field, plus a rationalization of the purposes of such a statute. The trouble with the argument is that the statute itself is explicit on the point. It provides:

"Sec. 3. The provisions of this Act shall apply to such other departments and agencies of the Government as the President may, from time to time, deem necessary in the best interests of national security." [5]

The statute puts the selection of the agencies to be affected in the hands of the President. It says nothing about sensitiveness or policy-making. The basic provision of the statute (Section 1) applies in terms to "any civilian officer or employee" in the named departments and agencies. When the President, under Section 3, supra, makes the statute applicable to other departments, he makes the "any civilian" provision applicable.

The foregoing is entirely constitutional. The Constitution vests all executive power in one person, the President. It

1. 5 U.S.C.A. § 631 note; 3 C.F.R. 72 (Supp.1953).

2. 58 Stat. 390 (1944), as amended, 5 U.S.C.A. § 863.

3. 64 Stat. 476 (1950), 5 U.S.C.A. § 22–1 et seq.

4. Cole v. Young, D.C., 125 F.Supp. 284 (1954).

5. 64 Stat. 477 (1950), 5 U.S.C.A. § 22–3.

provides:[6] "The executive Power shall be vested in a President of the United States." His is a lone, personal responsibility in so far as carrying out the laws which Congress has enacted is concerned. The business of the Congress is to make laws. The business of the President is to carry them out. Authority is ordinarily a concomitant of responsibility. But we need not here venture into the intricacies of executive-legislative relationship in respect to executive employees. It is enough to say that, when the Congress recites that the President may dismiss summarily executive employees whenever he deems dismissal necessary or advisable in the interest of the national security, the enactment is valid. The policies to be pursued in the matter by the Congress and by the President are for them to determine, not for us.

▌ Cole's second point is that Public Law 733 at most authorizes summary dismissal when such termination of employment is "necessary or advisable in the interest of the national security", while Executive Order 10450 requires agency heads to insure that the retention of any employee "is clearly consistent with the interests of the national security." He says the latter quoted clause is not within the former and, therefore, the Order is not within the statute. But we think the Executive Order is a pronouncement by the President that in his judgment it is advisable in the interest of the national security under present circumstances that no employee be retained unless his retention is clearly consistent with the interests of the national security. That is a rational and reasonable position. It is fully within the terms of the statute; and this is quite apart from the consideration that the President may have such power (to dismiss executive employees whose retention he deems not clearly consistent with the national security) as a part of the direct constitutional grant of "executive power". There is a line somewhere beyond which Congress cannot go in enacting prescriptions in respect to executive power over executive employees. It might be, for example, that, if Congress required the hiring of executive personnel whose employment the President deemed not consistent with the national security, the enactment would be void. Congress has the power to make the laws and so can make laws concerning Government employ; but the President has the power, and so the responsibility, of carrying out all the laws, and Congress cannot impinge upon that power. There is a boundary between the two powers. We do not have that problem in our view of the case. We advert to it because of the view expressed by our dissenting judge. If we were of his view and thought the President's Order inconsistent with the act of the Congress, we would have to decide the constitutional question thus presented.

Cole seems to argue that, since the statute places the discretion in the "agency head", the President had no power to issue an Order upon the subject. In the first place, this is an executive matter and, if Congress had meant to prohibit the President from acting in respect to it, a serious question as to the validity of its act would arise. As we have already said, the Constitution vests the executive power in the President. In the second place, Congress knew, or must be conclusively presumed to have known, that subordinate officers in the executive branch of the Government act under the direction of the President, and it must have had that fact in mind when it conferred discretion upon these agency heads in this statute. Such an understanding is implicit in the enactment. In the third place, Cole's argument in its ultimate essence is that the action of the agency head in the case at bar was void; thus the argument amounts to a contention that action by a subordinate is void if, having authority to act, he follows a policy and program laid down by a superior. That position is untenable on its face. The President surely has the right

6. Art. II, § 1, cl. 1.

to lay down the lines within which his subordinates shall exercise discretions confided in them, and their operation within such lines is valid, not void. Perhaps, if a subordinate refused to follow the Presidential declaration or directive under such circumstances, other problems might be presented, but we have none such here.

■ Cole's third point is that his notice of dismissal was not the required "written statement of the decision of the agency head". Public Law 733 provides that an employee proposed for suspension "shall be notified of the reasons for his suspension". Cole does not, and could not, complain about the sufficiency of the statement given him at this point. Then the statute provides that an employee proposed for dismissal shall receive five things, the first of which is a statement of the charges against him and the last a written statement of the decision of the agency head. Cole does not claim he did not get a written statement of the charges against him or that the statement given him was inadequate. His claim is that the letter of the Secretary which advised him his employment had been ordered terminated, "based on the study of all the documents in your case, including your reply to reference letter," was not a compliance with the statute as above quoted.

We are all familiar with the difference between "opinions" and "decisions" in judicial matters. "Opinions" state the reasons, and "decisions" merely state the actions taken. The statute here used a well-known word, and we give it its well-known meaning.

Cole claims the applicability of Mulligan v. Andrews,[7] but the statute there involved required a statement of the "reasons" for removal. The statute now before us does not so provide in respect to the final step in a termination of employment.

The judgment of the District Court dismissing the complaint is

Affirmed.

EDGERTON, Circuit Judge (dissenting).

As we held a year ago, enforcing the Lloyd-LaFollette Act's requirement that " 'No person in the classified civil service of the United States shall be removed' " without notice and reasons in writing: "The power of Congress thus to limit the President's otherwise plenary control over appointments and removals is clear." Roth v. Brownell, 94 U.S.App.D.C. 318, 320, 215 F.2d 500, 502. It does not follow, of course, that Congress could impose absurd and crippling limits. But this is irrelevant here.

In the Lloyd-LaFollette Act and the Veterans' Preference Act, Congress limited the President's control over removals. No one claims that these limitations are unreasonable. By the Act of August 26, 1950, Congress authorized exceptions to these limitations. 64 Stat. 476, 5 U.S.C.A. §§ 22–1, 22–3. The question is whether this case is within the exceptions. I think it is not, for three reasons.

1. The exceptions do not cover the Food and Drug Administration, in which the appellant was employed.

The Act of 1950 provides in § 1: "Notwithstanding the provisions of section 652 of this title [Lloyd-LaFollette Act], or the provisions of any other law, the Secretary of State; Secretary of Commerce; Attorney General; the Secretary of Defense; the Secretary of the Army; the Secretary of the Navy; the Secretary of the Air Force; the Secretary of the Treasury; Atomic Energy Commission; the Chairman, National Security Resources Board; or the Director, National Advisory Committee for Aeronautics, may, in his absolute discretion and when deemed necessary in the interest of national security, suspend, without pay, any civilian officer or employee * * *." Section 1 also provides that a suspended employee may be dismissed if the agency head thinks it "necessary or advisable in the interest of the national security". Section 3 provides that the

---

7. 93 U.S.App.D.C. 375, 211 F.2d 28 (D.C.Cir.1954).

Act "shall apply to such other departments and agencies of the Government as the President may, from time to time, deem necessary in the best interests of national security."

In Executive Order No. 10450 the President, ostensibly "deeming such action necessary in the best interests of the national security", undertook to extend the Act to "all other departments and agencies of the Government". I think this blanket extension unauthorized and invalid. Congress had specified some agencies that have something to do with national security. Committee reports describe them as "sensitive" or "concerned with vital matters" affecting national security. H.R.Rep.No. 2330, 81st Cong., 2d Sess. 4 (1950); S.Rep.No. 2158, 81st Cong., 2d Sess. 2 (1950); S.Rep.No. 2264, 80th Cong., 2d Sess. 2 (1948). Evidently Congress thought some other agencies might likewise be concerned with national security. Accordingly Congress authorized the President to extend the Act. There is, I think, not the slightest reason for supposing that Congress intended to authorize the blanketing in of all agencies. A committee report said: "the bill makes ample provision for the employment in nonsensitive agencies of certain of those employees who may be classified in sensitive departments and agencies as security risks." H.R.Rep.No. 2330, 81st Cong., 2d Sess. 4 (1950). Accordingly Section 1 of the Act provides "That the termination of employment herein provided shall not affect the right of such officer or employee to seek or accept employment in any other department or agency of the Government * * *." Since many agencies, including the Food and Drug Administration in the Department of Health, Education and Welfare, in which the appellant was employed, have nothing to do with national security, the Act of 1950 has nothing to do with them. The authorization to bring "other" departments and agencies within the Act should be recognized, in accordance with the purpose and intent of Congress, as limited to those that might reasonably be deemed "necessary in the best interests of national security." It could not reasonably be deemed necessary in the best interests of national security that employees in all agencies, including not only the Food and Drug Administration but the Fish and Wildlife Service, be subject to summary unappealable dismissal.

The Supreme Court has said regarding the "plain meaning" of an Act of Congress: "When that meaning has led to absurd or futile results * * * this Court has looked beyond the words to the purpose of the act. Frequently, however, even when the plain meaning did not produce absurd results but merely an unreasonable one 'plainly at variance with the policy of the legislation as a whole' this Court has followed that purpose, rather than the literal words." United States v. American Trucking Ass'ns, Inc., 310 U.S. 534, 543, 60 S.Ct. 1059, 1063, 84 L.Ed. 1345.

2. The Act of 1950 authorizes the head of an agency covered by the Act to dismiss suspended employees "whenever he shall determine such termination necessary or advisable in the interests of the national security". Appellant's agency head did not make that determination concerning the appellant, but determined only that appellant's continued employment "is not clearly consistent with the interests of national security". In Executive Order 10450 the President purported to adopt the "clearly consistent" test, but he had no authority to adopt it. It differs vitally from the "necessary or advisable" test that Congress prescribed.

The difference is closely parallel to that between the test, "reasonable grounds exist for belief that the person involved is disloyal", used in Executive Order 9835, [5 U.S.C.A. § 631 note] and the test, "there is a reasonable doubt as to the loyalty of the person involved", used in the later Executive Order 10241. [U.S.Code Congressional and Administrative Service, 1951, p. 1028.] As this court has held, that "amended standard applied a more rigid test of suitability

for government employment. It contemplated the possible existence of proof or information which, while not capable of inducing a belief that the person 'is disloyal,' does cause a reasonable doubt as to whether he is in fact loyal." Jason v. Summerfield, 94 U.S.App.D.C. 197, 200, 214 F.2d 273, 276, certiorari denied 348 U.S. 840, 75 S.Ct. 48.[1] Just so here, the amended standard applied a more rigid test of suitability for government employment. It contemplated the possible existence of information which, while not capable of inducing a belief that the person's dismissal is "necessary or advisable in the interests of national security", does cause a reasonable doubt as to whether his continued employment is consistent with the interests of national security. Under the new standard, but not under the old, no matter how important to the country a man's continued employment may be he must be dismissed if there is doubt about him from a security standpoint. The new standard gives employees less protection than Congress authorized, and thereby makes a deeper inroad on the safeguards of the Lloyd-LaFollette Act and the Veterans' Preference Act.

3. The procedure used in appellant's dismissal does not even comply with the Act of 1950. Even that Act requires "a written statement of the decision of the agency head". Frequently, in legal connections, "decision" means not only a result but the reasons for the result.[2] The Administrative Procedure Act follows this usage. It requires that "All decisions (including initial, recommended, or tentative decisions) shall become part of the record and include a statement of (1) findings and conclusions, as well as the reasons or basis therefor, upon all the material issues of fact, law, or discretion presented on the record; and (2)

the appropriate rule, order, sanction, relief, or denial thereof." Section 8(b); 60 Stat. 242, 5 U.S.C.A. § 1007(b). The letter telling appellant he was dismissed, but not telling him why, was evidently not "a written statement of the decision" as Congress uses that term in connection with administrative procedure. The required statement is plainly intended to be a safeguard against arbitrary action. Unless reasons are given no safeguard is provided. Cf. Mulligan v. Andrews, 93 U.S.App.D.C. 375, 211 F.2d 28.

---

1. The court found the difference so essential that employees who had been cleared under the old standard might be reexamined and dismissed under the new one.

2. One of the definitions of "decision" in Webster is "an account or report of a

conclusion, especially of a legal adjudication or judicial determination of a question or cause; as, a *decision* of the Supreme Court." One of the definitions in the Century is " * * * final judgment or opinion in a case which has been under deliberation or discussion: as, the *decision* of the Supreme Court."