

———◆———

Blaine P. Friedlander, Washington, D. C., with whom Mark P. Friedlander, Mark P. Friedlander, Jr., Washington, D. C., and Harry P. Friedlander, Arlington, Va., were on the brief, for petitioner.

John R. Hess, Asst. Corp. Counsel, with whom Chester H. Gray, Corp. Counsel, Milton D. Korman, Principal Asst. Corp. Counsel, and Hubert B. Pair, Asst. Corp. Counsel, were on the brief, for respondent.

Before HOOD, Chief Judge, and QUINN and MYERS, Associate Judges.

QUINN, Associate Judge:

This appeal is from an order of the Director of the Department of Motor Vehicles revoking petitioner's driver's license on the ground that he had accumulated fifteen points under the point system.[1] When petitioner was first notified that his license was being revoked in April 1965 he requested and was granted a hearing. The reviewing officer subsequently affirmed the revocation, and petitioner's further appeal to respondent resulted in the final order which we are now asked to review.

Under the point system, points are assessed against a driver after any conviction or forfeiture of collateral for a moving traffic violation. When eight points have been accumulated, the driver's permit is subject to suspension for a limited period of time, and after he has accumulated twelve or more points, it is subject to revocation. Points are erased three years after they are assessed.

Pursuant to these rules, petitioner was notified in December 1964 that his license was being suspended for thirty days because of three moving violations which had occurred on October 14, 1962, March 5, 1964, and September 28, 1964, for a total of eleven points. At the hearing which followed petitioner stated that he had another outstanding violation but that he was unsure of its disposition. Nevertheless, the hearing officer affirmed the suspension on the basis of the eleven points. On appeal to respondent, petitioner was granted a restricted sixty-day permit in lieu of the thirty-day suspension, which enabled him to drive while working.

Several months later, petitioner was notified that his license was being revoked on the basis of his accumulation of fifteen points. These points were assessed for the same three violations which had caused the suspension order plus a fourth which had occurred on September 22, 1964. Petitioner contends that as this last offense had taken place months before the suspension proceedings, it should have been considered by respondent at that time. Thus, he argues that the suspension was a bar to the revocation of his license.

Even if we were to assume, without deciding, that in this jurisdiction the

1. Traffic and Motor Vehicle Regulations of the District of Columbia, Part V.

doctrine of res judicata applied to administrative decisions such as these,[2] there would be no room for its application here. Res judicata is a complete bar to subsequent actions between parties involving the same claim or demand and prevents the consideration not only of those issues which were litigated but also those which might have been litigated in the first action. But when two actions between parties differ, only those matters actually litigated in the first are barred from relitigation in the second.[3] Since the two proceedings here were not the same—one being for suspension and the other being for revocation—the former would have barred the latter only if all four violations had been essential to the decision suspending petitioner's license. But the record clearly shows that the September 22 violation was not considered at that time. Moreover, we note that there was no way in which that offense could have been considered by the hearing officer. Under the regulations, points cannot be added to a driver's record until there has been a conviction or forfeiture of collateral and, as a practical matter, the Department of Motor Vehicles cannot assess points until it has been officially notified of any such disposition. Petitioner did not forfeit collateral on the September 22 violation until December 1, and we take judicial notice of the fact, recorded in the public records of the Department,[4] that the forfeiture was not certified to it until January 26, 1965.

Petitioner cites the case of Polsky v. Atkins, 197 Tenn. 201, 270 S.W.2d 497 (1954), to support his contention that a fact, which is available to the government at the time of a hearing and is not brought forward, may not be considered at a later hearing because of the principle of res judicata. The Polsky case dealt with an application for a liquor license. When city officials of Chattanooga refused to issue Polsky the required certificate of good moral character, he petitioned the commissioner of finance and taxation for a hearing. The city officials failed to appear at the hearing and Polsky gave his version of why the certificate had been denied. The commissioner apparently decided that Polsky had the requisite moral character for he issued the license. But when Polsky applied for a new license a year later, the city officials again refused him a certificate. This time, however, they appeared and presented evidence of events which had occurred prior to the first hearing. The license was denied, but the Supreme Court of Tennessee reversed on grounds of res judicata, saying that evidence which "was before the powers that be at the time another license was granted cannot now be offered and prevent this party from being issued a license." [5]

Although the Polsky case dealt with a problem similar to the one which we are considering here, we believe that the two cases are distinguishable. Unlike the situation in Polsky, information about the fourth violation was not before the proper officials at the time of petitioner's first hearing and there was no failure to produce available evidence. Furthermore, at issue in Polsky's first hearing was the broad question of his moral character in the preceding period. The decision granting him the license established that he had the requisite moral char-

2. See Jason v. Summerfield, 94 U.S.App. D.C. 197, 214 F.2d 273, cert. denied 348 U.S. 840, 75 S.Ct. 48, 99 L.Ed. 662 (1954); Niagara Mohawk Power Corp. v. Federal Power Com'n, 91 U.S.App. D.C. 395, 202 F.2d 190 (1952); Churchill Tabernacle v. Federal Communications Com'n, 81 U.S.App.D.C. 411, 160 F.2d 244 (1947).

3. In re Hanson's Estate, 210 F.Supp. 377 (D.C.1962), aff'd sub nom. Saunders v. Hanson, 117 U.S.App.D.C. 191, 327 F.2d 889 (1963), cert. den. 379 U.S. 820, 85 S. Ct. 41, 13 L.Ed.2d 31 (1964).

4. Washington Gas Light Co. v. Baker, 90 U.S.App.D.C. 98, 195 F.2d 29 (1951); Fletcher v. Jones, 70 App.D.C. 179, 105 F.2d 58, cert. den. 308 U.S. 555, 60 S.Ct. 116, 84 L.Ed. 467 (1939); Interstate Natural Gas Co. v. Southern California Gas Co., 209 F.2d 380 (9th Cir. 1953).

5. 270 S.W.2d 497, at 499.

acter, and the city was thus precluded from challenging that finding in a later proceeding. The issue in the first hearing of the present case was merely whether petitioner's license should be suspended on the basis of his accumulation of eleven points. There was no determination which would prevent the bringing forward of other violations at a later date.

 When petitioner's counsel, at the hearing on the revocation of his license, raised the res judicata question, the hearing officer reviewed his file, including the transcript of the prior hearing, and apprised him that the fourth violation could not have been considered then because it had not yet been certified to the Department. Petitioner maintains that it was error for the hearing officer to examine these papers and to recite their contents without their formal introduction into evidence. As we have stated before, an administrative agency is not bound by common law rules of evidence and an examiner has an inherent right to take official notice of certain facts not presented in evidence.[6] It was entirely within the competence of the hearing officer to examine the Department's own records of a prior interrelated proceeding involving petitioner in order to answer the question of law put to him by petitioner and to state his conclusions for the record.[7] And it was likewise correct to include those papers in the record on appeal for without them we would be powerless to consider petitioner's contentions.

Petitioner further claims that he was denied a fair hearing on the revocation of his permit. He complains that the hearing officer removed certain papers from the file and destroyed them in his presence without showing them to him. The government answers that they were merely duplicates of other papers. Whatever these papers might have been, petitioner has failed to demonstrate how he was prejudiced by their destruction. Petitioner was granted every opportunity to show any extenuating circumstances justifying the retention of his permit despite his record,[8] and it would be mere speculation to find that the removal of some unknown papers violated his rights.

We need not consider the contention that the transcript of the hearing is incomplete despite the hearing officer's certification to the contrary, for petitioner states in his brief that it is sufficiently complete for the matters raised by his petition.

Petitioner's remaining assertions of error are without merit.

Affirmed.

District of Columbia Court of Appeals.

Argued Oct. 11, 1965.

Decided Oct. 25, 1965.

---

6. Aquino v. Knox, D.C.Mun.App., 60 A.2d 237 (1948).

7. See Paramount Cap Mfg. Co. v. National Labor Rel. Bd., 260 F.2d 109 (8th Cir. 1958).

8. Council v. Director of Motor Vehicles, D.C.Mun.App., 159 A.2d 874 (1960).