**OLD DUTCH FARMS, INC., Plaintiff,**

v.

**MILK DRIVERS AND DAIRY EMPLOYEES LOCAL UNION NO. 584, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, Defendant.**

No. 65–C–276.

United States District Court
E. D. New York.

March 6, 1968.

Marcus, Maltinsky & Marcus, by Herbert L. Maltinsky, Brooklyn, N. Y., for plaintiff.

Cohen & Weiss, by Bruce H. Simon, New York City, for defendant.

Memorandum of Decision and Order

MISHLER, District Judge.

Plaintiff moves pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment on the issue of liability.

The movant is a New York corporation having its principal place of business within the Eastern District of New York, and defendant is a labor organization engaged in representing or acting for members within this district within the meaning of section 185(c) (2) of title 29, United States Code. Jurisdiction is predicated upon sections 1331 and 1337 of title 28 and section 303 [1] of the Labor Management Relations Act of 1947.

---

1. 29 U.S.C. § 187 (1964) :

(a) It shall be unlawful, for the purpose of this section only, in an industry or activity affecting commerce, for any labor organization to engage in any activity or conduct defined as an unfair labor prac-

The complaint contains two separately labelled "causes of action". The first charges that defendant violated section 8(b) (4) of the National Labor Relations Act, as amended;[2] the second alleges that the National Labor Relations Board's order concluding that defendant engaged in certain proscribed secondary activity is dispositive of the issue of liability in this action.

In May, 1963, plaintiff, a licensed milk dealer, owned and operate one retail store and six delivery routes, all in Kings County, New York, and was purchasing its milk from The Balsam Farm, Inc. (Balsam). At about that time, however, plaintiff became embroiled in a labor dispute with defendant. Plaintiff alleges that defendant, on May 27, 1963, directed Balsam's employees to picket and strike their employer, thereby inducing, coercing and compelling Balsam to cease supplying plaintiff with milk. Plaintiff filed unfair labor practices charges with the N.L.R.B. the following day.

On June 18, 1963, the Board petitioned this court for an injunction under section 10(l) of the N.L.R.A.,[3] but after an extensive hearing the Honorable John F. Dooling, Jr. denied the petition as a matter of law.[4]

Returning to the administrative milieu, the matter was called for a hearing before Trial Examiner Owsley Vose on August 13, 1963. All parties and their counsel appeared and were afforded a full opportunity to be heard, to examine and cross-examine witnesses, and to submit oral arguments. The parties agreed not to call any witnesses, however, preferring to stipulate that the testimony and exhibits that had been adduced before Judge Dooling in connection with the section 10(l) injunction proceeding should be considered as having been adduced before the trial examiner as well. The parties further stipulated that the trial examiner could also consider certain testimony which, it was agreed, would have been given by three additional witnesses had they been called to testify.

Following the hearing before the trial examiner, defendant was granted additional time within which to file a brief. Instead, it chose to file Judge Dooling's findings of fact and conclusions of law in the injunction proceeding.

In a decision dated October 9, 1963, the trial examiner concluded that defendant had conducted an illegal secondary boycott. The Board affirmed, expressly adopting the trial examiner's findings, conclusions and recommendations, and the Court of Appeals granted enforcement of the Board's order.[5]

---

tice in section 158(b) (4) of this title.

(b) Whoever shall be injured in his business or property by reason or [sic] any violation of subsection (a) of this section may sue therefor in any district court of the United States subject to the limitations and provisions of section 185 of this title without respect to the amount in controversy, or in any other court having jurisdiction of the parties, and shall recover the damages by him sustained and the cost of the suit.

2. 29 U.S.C. § 158(b) (4), in part, states as follows:

(b) It shall be an unfair labor practice for a labor organization or its agents—

(4) (i) to engage in, or to induce or encourage any individual employed by any person engaged in commerce or in an industry affecting commerce to engage in, a strike or a refusal in the course of his employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services; or (ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is—

\*　　\*　　\*　　\*　　\*

(B) forcing or requiring any person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person. \* \* \*

3. 29 U.S.C. § 160(l) (1964).

4. McLeod v. Milk Drivers Local 584, Docket No. 63 Civ. 748, August 6, 1963.

5. N. L. R. B. v. Milk Drivers and Dairy Employees Local Union No. 584, 341 F.2d 29 (2d Cir.), cert. denied, 382 U.S. 816, 86 S.Ct. 39, 15 L.Ed.2d 64 (1965).

The present action for damages under section 303 was instituted several weeks after the second circuit's determination. Defendant initially won a stay of the action pending arbitration, but the circuit court reversed.[6] Following the Supreme Court's denial of certiorari, defendant filed an answer denying substantially all of the material allegations of the complaint and asserting four affirmative defenses to the first cause of action: (1) laches; (2) statute of limitations; (3) exclusive jurisdiction in the arbitrator; and (4) prior settlement of the dispute. The fifth and sixth affirmative defenses were directed against the second cause of action.

Plaintiff maintains that defendant's denials and affirmative defenses lack both merit and substance. In short, the former argues that since the latter has already been adjudged to have engaged in conduct proscribed by section 8(b)(4), the only issue left to be tried is the question of damages.

■■ Although there is language in some of the cases to the effect that the principles of res judicata and collateral estoppel are inapplicable to administrative proceedings, such language is certainly too broad.[7] The policy considerations favoring finality to litigation, the prevention of needless duplication, and the avoidance of additional burdens in time and expense are as relevant to the administrative as to the judicial process. See, United States v. Utah Const. & Mining Co., 384 U.S. 394, 420, 86 S.Ct. 1545, 1559, 16 L.Ed.2d 642 (1966); International Union of Mine, Mill and Smelter Workers, Local No. 15 v. Eagle-Picher Mining & Smelting Co., 325 U.S. 335, 340, 65 S.Ct. 1166, 1168, 89 L.Ed. 1649 (1945). Furthermore, complete dis-

closure at the administrative level should be encouraged. United States v. Utah Const. & Mining Co., supra. Thus, "[w]hen an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose." United States v. Utah Const. & Mining Co., supra, 384 U.S. at 422, 86 S.Ct. at 1560.

■ Where there is some good reason for a new judicial inquiry into the same facts, however, the courts will not view the administrative findings as final. See, United States v. Utah Const. & Mining Co., supra at 421 n. 18, 86 S.Ct. at 1559 n. 18. Indeed, they appear in accord with Professor Davis's view that the doctrine of res judicata should be used when the reasons for it are present in full force, modified when such modification is needed, and rejected when the reasons against its use outweigh those in its favor. 2 Davis, Administrative Law § 18.02 at 548 (1958).[8] The crucial issue upon this motion, therefore, is whether there is some factor present either in the prior proceedings or the nature of an action under § 303 which militates against the application of the doctrine.

Section 303, in opening up hot cargo agreements, secondary boycotts and work assignments to the district courts, represents a substantial exception to the N.L.R.B.'s primary jurisdiction over unfair labor practice proceedings. Sovern, Section 301 and the Primary Jurisdiction of the N.L.R.B., 76 Harv.L.Rev. 529, 549 (1963). Actions commenced under this section are considered entirely separate from cases that arise out of the same

---

6. Old Dutch Farms, Inc. v. Milk Drivers and Dairy Employees Local Union No. 584, 243 F.Supp. 246 (E.D.N.Y.1965), rev'd, 359 F.2d 598 (2d Cir.), cert. denied, 385 U.S. 832, 87 S.Ct. 71, 17 L.Ed. 2d 67 (1966).

7. See, e. g., Pearson v. Williams, 202 U.S. 281, 284–285, 26 S.Ct. 608, 609, 50 L. Ed. 1029 (1906), where the administra-

tive inquiry was summary in nature, and, Jason v. Summerfield, 94 U.S.App. D.C. 197, 214 F.2d 273, 276, cert. denied, 348 U.S. 840, 75 S.Ct. 48, 99 L.Ed. 662 (1954), where an administrative tribunal was permitted to change its position after the underlying executive order was amended.

8. See note 7, supra.

labor dispute but are brought before the N.L.R.B., International Longshoremen's & Warehousemen's Union v. Juneau Spruce Corp., 342 U.S. 237, 244, 72 S.Ct. 235, 239, 96 L.Ed. 275 (1952), and no substantive symmetry is required. N.L. R.B. v. Radio & Television Broadcast Engineers Union, 364 U.S. 573, 584–585, 81 S.Ct. 330, 337, 5 L.Ed.2d 302 (1964); Kipbea Baking Co. v. Strauss, 218 F. Supp. 696, 700 (E.D.N.Y.1963). "Not only are inconsistent decisions by Board and court possible, but they have in fact been rendered." Sovern, supra. Compare, United Brick & Clay Workers v. Deena Artware, Inc., 198 F.2d 637 (6th Cir.), cert. denied, 344 U.S. 897, 73 S.Ct. 277, 97 L.Ed. 694 (1952), with N.L.R.B. v. Deena Artware, Inc., 198 F.2d 645 (6th Cir. 1952), cert. denied, 345 U.S. 906, 73 S.Ct. 644, 97 L.Ed. 1342 (1953).

Acquiescence in or approval of such results indicates that the courts feel that the congressional scheme of parallel enforcement of section 8(b) (4) violations by the courts and the Board precludes reliance upon *res judicata* or collateral estoppel based upon the findings of either fact finder.[9] Apparently this is the second circuit's position, for in this very action, while denying a stay pending arbitration, the court of appeals noted the following:

> Prior to the commencement of this action [under section 303], the N.L. R.B. determined that the union had violated § 8(b) (4) of the N.L.R.A. * * * [A]n administrative determination, such as the one involved here, does not bind the court con-

fronted with the question whether particular union activity violated § 8(b) (4) in a § 303 suit.

Old Dutch Farms, Inc. v. Milk Drivers, etc., Local 584, 359 F.2d 598, 602–603 n. 7 (2d Cir. 1966).[10] Cf. Fibreboard Paper Products Corp. v. East Bay Union of Machinists, Local 1304, 344 F.2d 300, 305–306 (9th Cir.), cert. denied, 382 U. S. 826, 86 S.Ct. 61, 15 L.Ed.2d 71 (1965).

■ Moreover, it appears from the record and affidavits submitted upon this motion that a substantial factual issue remains to be tried. Defendant has consistently asserted that Balsam was inextricably entwined in plaintiff's operations and was neither a disinterested nor a neutral party to the dispute. While the court of appeals concluded that upon the record adduced at the injunction hearing Judge Dooling's intimation of common control could not be sustained, the courts have often recognized that hearings held pursuant to section 10(*l*) are not the equivalent of a plenary trial, but rather are designed to assist a preliminary investigation. See, e. g., N. L. R. B. v. Denver Bldg. & Const. Trades Council, 341 U.S. 675, 681–682, 71 S.Ct. 943, 948, 95 L.Ed. 1284 (1951). Accordingly, this court holds that the Board's determination is not binding in this case, and that at least one significant factual issue pertinent to the question of liability remains to be tried.

■■ Regarding plaintiff's challenge to defendant's affirmative defenses, the court has considered the former's application as a motion to strike under Rule 12(f) of the Federal Rules.[11] Although

---

9. A note writer has suggested that Congress may have felt that a union is more likely to be deterred from engaging in unlawful activity if it must win both before the court and the Board. Note, Damages for Unfair Labor Practices, 40 Ind.L.J. 37, 56 (1964–65).

10. See note 6, supra. In addition, it seems that a court may adopt certain administrative findings as long as they are not treated as binding. References to administrative findings are permissible where such references are simply the

court's method of indicating its concurrence. See, Carpenters Union, Local 131 v. Cisco Const. Co., 266 F.2d 365, 370–371 (9th Cir.), cert. denied, 361 U.S. 828, 80 S.Ct. 75, 4 L.Ed.2d 70 (1959).

11. Rule 12(f) provides as follows:
    Motion to Strike. Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon him or upon the court's own initiative at any

at one time the proper procedure for raising objection to the sufficiency of a defense troubled some courts, it seems that the 1946 amendment to Rule 12(f) was designed to provide a specific method of raising such a challenge. 2A J. Moore, Federal Prac. ¶ 12.21 at 2320–2321 (2d ed. 1967). The availability of the remedy is extremely limited, however, and only defenses that are clearly insufficient as a matter of law will be stricken.

The fifth and sixth affirmative defenses attack the second cause of action. In light of the court's discussion of the effect of the Board's determination, no additional right of action accrued to plaintiff as a result of the Board's order. Therefore, the second cause of action is dismissed as legally insufficient, and the fifth and sixth affirmative defenses, now valueless, are also dismissed. See, Local 33, International Hod Carriers Building and Common Laborers' Union v. Mason Tenders Dist. Council, 291 F.2d 496 (2d Cir. 1961).

Defendant's second [12] and third [13] affirmative defenses are, likewise, legally insufficient. The first and fourth defenses, however, are sufficient on their face. The claim of laches is based upon defendant's assertion that plaintiff's delay in instituting this action seriously prejudiced the former. See, Russell v. Todd, 309 U.S. 280, 287, 60 S.Ct. 527, 531, 84 L.Ed. 754 (1940). Although generally and briefly stated, it satisfies Rule 8(c).

To recapitulate, plaintiff's motion for summary judgment is denied, and plaintiff's second cause of action, as well as defendant's second, third, fifth and sixth affirmative defenses are dismissed, and it is

So ordered.

time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

12. International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW) v. Hoosier Cardinal Corp., 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966); International Union of Operating Engineers v. Fischbach & Moore, Inc., 350 F.2d 936 (9th Cir. 1965), cert. denied, 384 U.S. 904, 86 S.Ct. 1336, 16 L.Ed.2d 358 (1966).

13. The court of appeals has already held that this dispute was not arbitrable. Old Dutch Farms, Inc. v. Milk Drivers etc. Local 584, supra.